In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-3796

HANS EVERS, M.D.,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE, Commissioner
of Social Security, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 2189—**John W. Darrah**, *Judge.*

ARGUED MAY 9, 2008—DECIDED JULY 31, 2008

Before FLAUM, KANNE, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Dr. Hans Evers performed medical
consulting services for the United States Social Security
Administration (SSA) until SSA terminated his contract
following a verbal altercation Evers had with an SSA
supervisor. Evers initially sought administrative relief
for the contract termination and for the subsequent rejec-
tion of three bids he placed on other SSA contracts. Dissat-
isfied with the results, Evers filed suit in the Northern
District of Illinois, alleging constitutional tort claims
against SSA officers for violating his Fifth Amendment

rights to procedural and substantive due process. Evers's complaint also sought judicial review of SSA for violating his due-process rights and for failing to follow federal regulations governing the suspension, termination, and debarment of government employees. The district court dismissed Evers's due-process claims and some of his regulatory claims, finding that the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*, divested it of jurisdiction over those claims because they "related to" Evers's contract with SSA. Two years later, after a bench trial, the district court dismissed the remainder of the case as moot. Because the district court lacked jurisdiction, we affirm both dismissals.

## I. HISTORY

Dr. Hans Evers, a board-certified neurologist, worked as a medical consultant for SSA pursuant to a contract awarded in December 1998. The initial contract period ran from January 1 through December 31, 1999, and the contract carried four one-year renewal options. SSA exercised all four options, and Evers began work under the final renewal term in January 2003.

On August 1, 2003, a verbal altercation took place between Dr. Evers and Lillie Brown, an SSA employee who was responsible for monitoring and training contractors. Brown concluded that Evers had erred by commenting on a non-medical issue in a case, and went to discuss the matter with Evers. When Brown explained her observation to Evers, he confronted her in a loud voice—Evers shouted to Brown that she was incompetent to address the issue, that she should leave his work area, and that her interference with his work should

be investigated. Brown immediately reported Evers's outburst, and later that day an SSA director told Evers to leave the building because Brown feared for her personal safety. Evers left, and sent Brown an e-mail that apologized for his "angry acting-up." Three days later, Evers received a letter from an SSA contract specialist, advising him that his work under his contract was being "stopped" while SSA investigated the incident. Around the same time, Evers sent a letter to SSA explaining his version of the events.

On August 14, 2003, Dr. Evers met with SSA officials to discuss what had transpired. The next day, Reggie Poskocimas, a contracting officer for SSA, wrote Evers a letter stating that SSA was terminating Evers's contract for cause due to the incident with Brown. Poskocimas's letter referred to the termination and removal-from-duty clauses in Evers's contract, which permitted SSA to remove Evers if SSA determined him unfit to perform due to "[d]isorderly conduct, use of offensive language, quarreling, intimidation by words or actions or fighting . . . . [or] participating in disruptive activities which interfere with the normal and efficient operations of the Government." The letter also cited a clause that made all disputes "subject to the Contract Disputes Act," and advised Evers that he could either appeal his contract termination to the General Services Administration Board of Contract Appeals (GSABCA) within 90 days, or he could file an action on his claim in the United States Court of Federal Claims within 12 months. *See* 41 U.S.C. §§ 606, 609(a)(1).

A few weeks later, Dr. Evers elected to appeal Poskocimas's termination decision to the GSABCA. In his complaint to the GSABCA, Evers alleged tort claims for retaliatory discharge and intentional interference with an

existing contract, violations of his constitutional rights to substantive and procedural due process, and a failure by SSA to follow federal regulations when terminating him. In November 2003, the GSABCA explained that it did not have jurisdiction to consider constitutional violations or torts, nor could it decide the asserted regulatory claims because they had never been submitted to a contracting officer for decision. As a result, the GSABCA asserted its jurisdiction over only the challenge to the suspension and termination of Evers's contract; the GSABCA dismissed the other claims without prejudice. The GSABCA offered Evers a choice: he could voluntarily withdraw the appeal of his contract claim without prejudice before November 18, 2003, or he could continue to litigate the propriety of his suspension and termination before the GSABCA. Evers gave untimely notice that he wished to withdraw, and the GSABCA dismissed Evers's appeal, with prejudice, in December 2003.

While Dr. Evers's GSABCA appeal was pending, he submitted bid proposals in response to three solicitations for SSA contracts. Poskocimas, who had terminated Evers, was also responsible for awarding these contracts, and rejected Evers's bids. Poskocimas sent Evers a letter stating that SSA had awarded the contracts to other doctors and inviting Evers to submit future bids. When Evers asked Poskocimas why his bids were rejected, Poskocimas sent Evers a second letter, which explained that Evers's quotes were rejected "based on [his] past contract performance, specifically, [his] actions on August 1, 2003, which led to termination of [the] contract for cause."

Dr. Evers filed three protests (one for each rejected bid) with the General Accounting Office (GAO) in January 2004.

Evers claimed that SSA had engaged in an unfair and "secret" process when denying his bids. One month later, SSA filed a response with the GAO, explaining that it rejected Evers's bids because, pursuant to federal regulations, it presumed him to be "nonresponsible" due to the termination of his previous contract for cause. *See* 48 C.F.R. § 9.104-3(b). Eventually, Evers and SSA agreed that SSA should have nonetheless referred his quotes to the Small Business Administration (SBA) before determining that he was not a responsible bidder; the GAO dismissed the protests based on SSA's representation that it would refer the quotes to SBA.

In late March 2004, Dr. Evers filed a three-count complaint in the Northern District of Illinois against SSA, Poskocimas, Brown, and several other SSA officers. Counts I and II of the complaint alleged constitutional torts against the SSA officers under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971). *See also Davis v. Passman*, 442 U.S. 228, 242 (1979). Specifically, Count I alleged that the officers violated Evers's Fifth Amendment right to procedural due process by pinning a "badge of infamy" on Evers without a meaningful opportunity for review. Evers claimed that he had a property interest in the remaining five months of his contract with SSA, and he alleged that he had liberty interests in the renewal of his contract and "in not having his contract terminated under circumstances calling [into] question his good name, reputation, honor, and integrity"; Evers argued that he was denied these interests without notice or hearing when the officers summarily suspended him, terminated his contract, and denied his bid requests. Count II of the complaint alleged that the SSA officers deprived Evers of his

Fifth Amendment right to substantive due process because terminating his contract was an overreaction to the August 1 incident—Evers claimed that the officers engaged in "administrative tyranny . . . so arbitrary that it shocks the conscience." Count III called for judicial review of SSA under the Administrative Procedure Act, 5 U.S.C. § 702, for violating Evers's due-process rights, and also alleged that SSA failed to follow federal regulations when it suspended Evers's contract and excluded him from receiving future work. Evers requested a myriad of remedies including, among others, $2.7 million in damages, review of the administrative record, declaratory relief, a reversal of the stop-work order and contract termination, and that SSA provide "good references" to potential employers if Evers applied for work in the future.

In late June 2005, the district court ruled on a motion to dismiss or for summary judgment filed by SSA and its officers, and on a motion for summary judgment on Count III filed by Dr. Evers. First, the district court dismissed all claims "relating to the termination of [Evers's] contract," pursuant to the Contract Disputes Act. The district court explained that the Contract Disputes Act outlines a distinctive procedure for resolving " '[a]ll claims by a contractor against the government relating to a contract . . . .' " (quoting 41 U.S.C. § 605(a)). The court reasoned that Evers's constitutional due-process claims "related to" the termination of his contract because "the source of the rights upon which Evers bases his claim is his contract with the SSA and the alleged wrongful termination of that contract." Consequently, the court held that it lacked jurisdiction over Counts I and II of the complaint, as well as over Evers's request in Count III for a reversal of his suspension and termination, which the

court deemed was really a request for "specific performance on the contract." Next, the court explained that the constitutional torts alleged against the SSA officials in Counts I and II were improper *Bivens* actions because "the comprehensive system of remedies for resolving government contract suits via the [Contract Disputes Act] precludes a private cause of action for an alleged constitutional violation."

The district court then turned to the cross-motions for summary judgment on the remaining claims in Count III—that SSA had violated federal regulations when it denied Dr. Evers's bids for the three subsequent contracts. On those claims, the district court found that a "genuine issue of material fact [existed] as to whether SSA's actions constituted a *de jure* suspension and/or *de facto* debarment." The case proceeded to a bench trial in March 2007.

In September 2007, the district court determined that the controversy between Dr. Evers and SSA had become moot. After thoroughly analyzing each of the eleven forms of relief requested in Count III of the complaint, the district court concluded: "[e]ven if the Court were to find that [Evers] was *de jure* suspended and/or *de facto* debarred as alleged, there would be no change in Evers' present status." The court added, "if Evers does apply for contracts in the future and is not awarded such contracts, Evers retains the right to challenge those actions . . . ." The district court also noted that Evers's medical license had been suspended in 2004 for his failure to complete continuing-medical-education requirements, and the court explained that this suspension further limited its ability to fashion a remedy. Evers timely appealed from both the June 2005 and September 2007 orders.

## II. ANALYSIS

On appeal, Dr. Evers argues that the district court should not have dismissed the majority of his claims pursuant to the Contract Disputes Act because the claims were not contractual in nature. Evers also contends that the district court's decision to dismiss the *Bivens* claims was predicated on its erroneous assumption that the Contract Disputes Act barred jurisdiction. Finally, Evers disputes the district court's dismissal of his remaining claims as moot.

This case begins and ends with our determination of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Krueger v. Cartwright*, 996 F.2d 928, 930 (7th Cir. 1993). We review a district court's dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) *de novo*. *Newell Oper. Co. v. Int'l U.A.W.*, No. 07-1931, slip op. at 6-7 (7th Cir. July 2, 2008). And we review a district court's dismissal on mootness grounds *de novo*. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). " 'When reviewing a dismissal for lack of subject matter jurisdiction, we note that a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff.' " *Id.* at 625 (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). In determining whether to dismiss for lack of jurisdiction, " '[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.' " *Id*. (quoting *Long*, 182 F.3d at 554).

" 'Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically

authorized by federal statute.'" *Newell Oper. Co.*, No. 07-1931, slip op. at 7 (quoting *Teamsters Nat. Auto. Transporters Indus. Negotiating Comm. v. Troha*, 328 F.3d 325, 327 (7th Cir. 2003)). It is well-established that "'a precisely drawn, detailed statute pre-empts more general remedies.'" *Hinck v. United States*, 127 S. Ct. 2011, 2015 (2007) (quoting *EC Term of Years Trust v. United States*, 127 S. Ct. 1763, 1764 (2007)); *see also Brown v. GSA*, 425 U.S. 820, 834 (1976).

The Contract Disputes Act is "the paradigm of a 'precisely drawn, detailed statute' that preempts more general jurisdictional provisions. It purports to provide final and exclusive resolution of all disputes arising from government contracts covered by the statute." *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 891 (6th Cir. 1998) (quoting *A & S Council Oil Co., Inc. v. Lader*, 56 F.3d 234, 241 (D.C. Cir. 1995) (internal citation omitted)); *see also Inter-Coastal Xpress, Inc. v. United States*, 49 Fed. Cl. 531, 538 (2001). The Contract Disputes Act applies to any express or implied contract entered into by an executive agency for the procurement of services. *See* 41 U.S.C. § 602(a). The statute provides that "[a]ll claims by a contractor against the government *relating to a contract* shall be in writing and shall be submitted to the contracting officer for a decision." *Id.* § 605(a) (emphasis added). "The contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." *Id.* § 605(b). The statute authorizes two such forms of review: a contractor may appeal the contracting officer's decision to the pertinent agency's board of contract appeals within 90 days after it receives the decision, *see id.* § 606, or the contractor may file a claim in the United States Court of Federal Claims, *see id.* § 609(a)(1).

The parties agree that the Contract Disputes Act applied to Dr. Evers's services contract with SSA; in fact, the contract contained a clause stating all disputes would be resolved "subject to the Contract Disputes Act," and Evers initially pursued relief as contemplated under the statute by filing an appeal with the GSABCA. We must therefore determine whether the claims in Evers's complaint in the district court "related to" his contract with SSA. If so, the district court properly concluded that it lacked subject-matter jurisdiction because the Contract Disputes Act is "precisely drawn" to preclude such claims from being entertained by federal district courts.

The interpretation of the "relating to a contract" language in the Contract Disputes Act is a question of first impression in our circuit. Other circuits have determined whether a claim "relates to a contract" based upon the source of the plaintiff's rights and the relief sought by the plaintiff. *See B&B Trucking, Inc. v. U.S. Postal Serv.*, 406 F.3d 766, 768 (6th Cir. 2005) (en banc) ("The [Contract Disputes Act] bars district court jurisdiction if the court determines that a plaintiff's claims against a government agency are 'essentially contractual' in nature. The classification of a particular action as one which is or is not [essentially contractual] depends both on the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate)." (internal citations and quotation marks omitted)); *Lader*, 56 F.3d at 240 ("[T]he determination of whether an action is 'at its essence a contract action [for purposes of the parallel provisions of the Tucker Act, 28 U.S.C. §§ 1346(a), 1491] depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)' " (quoting *Megapulse, Inc. v. Lewis*,

672 F.2d 959, 968 (D.C. Cir. 1982) (alteration in original))); *see also Applied Cos. v. United States*, 144 F.3d 1470, 1478 (Fed. Cir. 1998) ("Congress's decision to limit the applicability of the Act's procedures to those claims 'relating to' a contract indicates that the claim at issue must have some relationship to the terms or performance of a government contract."); *Campanella*, 137 F.3d at 892; *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1136 (6th Cir. 1996). The Sixth Circuit has also explained that, " '[t]he plaintiff's title or characterization of its claims is not controlling. [A] plaintiff may not avoid the jurisdictional bar of the [Contract Disputes Act] merely by alleging violations of regulatory or statutory provisions.' " *B&B Trucking, Inc.*, 406 F.3d at 768 (quoting *RMI Titanium Co.*, 78 F.3d at 1136); *see also Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77 (D.C. Cir. 1985).

Bearing this persuasive authority in mind, we will determine whether each of Dr. Evers's claims "related to" his SSA contract by examining the facts alleged in the complaint to ascertain the source of Evers's rights and the forms of relief requested (or appropriate) to vindicate those rights. In conducting our analysis, we also adopt the view that the characterization or labeling of claims by the pleader is not controlling. *See B&B Trucking, Inc.*, 406 F.3d at 768; *Ingersoll-Rand*, 780 F.2d at 77. So Evers cannot escape the precisely drawn remedial framework outlined by the Contract Disputes Act merely by styling his complaint as one for redress of constitutional torts and regulatory violations rather than as one for breach of contract—such a tactic, albeit crafty pleading, will not suffice. *See B&B Trucking, Inc.*, 406 F.3d at 768; *RMI Titanium Co.*, 78 F.3d at 1136.

But Evers claims that, in addition to merely labeling his claims as non-contractual, the claims he presented did

not have their genesis in his contract, nor did he seek contractual remedies. Instead, Evers regards his due-process claims and his claims for failure to follow federal regulations against SSA as "only tangentially" involving his contract.

We agree with the district court's decision to dismiss the procedural due-process claims pursuant to the Contract Disputes Act because the claims "related to" Dr. Evers's contract with SSA. First, even from a visceral reading of the complaint, it is clear that the source of the procedural due-process claims was really Evers's SSA contract. In order to make a *prima facie* showing that SSA officials deprived him of his right to procedural due process, Evers first needed to show that the officials deprived him of a property interest or a liberty interest. *See Domka v. Portage County*, 523 F.3d 776, 779-80 (7th Cir. 2008) ("'An essential component of a procedural due process claim is a protected property or liberty interest.'" (quoting *Minch v. City of Chicago*, 486 F.3d 294, 302 (7th Cir. 2007))). Evers identified three such interests to satisfy this threshold requirement: (1) a property interest in the remaining five months of *his contract* with SSA; (2) a liberty interest in the renewal of *the contract*; and (3) a liberty interest in avoiding the "badge of infamy" that SSA pinned on him when it besmirched his good name and reputation *by terminating the contract* and then subjecting him to the "secret 'Star Chamber'" determination that he was not a responsible bidder.

The defect in Dr. Evers's first two predicate interests is patently obvious—Evers specifically designates the contract as the source of his rights. In his brief, Evers comes close to conceding that the property interest is "essentially contractual," and we have no doubt that it is. To decide

whether Evers had a "legitimate claim of entitlement" to his SSA contract, *see Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005), a court would need to analyze the contractual terms and provisions governing termination and suspension. As for the first alleged liberty interest in the renewal of Evers's contract, it is not only essentially contractual, it is imaginary. For we have explained on more than one occasion that " '[l]iberty interests can arise from two sources: the Federal Constitution or state law.' " *Domka*, 523 F.3d at 780 (quoting *Thielman v. Leean*, 282 F.3d 478, 480 (7th Cir. 2002)). Evers's asserted "liberty interest" in the renewal of his federal contract arises from neither and is thus not a liberty interest at all—it is merely an unripe property interest.

Dr. Evers's other designated liberty interest requires slightly closer inspection. The Due Process Clause protects against deprivation, without notice and hearing, of one's liberty interest in his good name, reputation, honor, and integrity. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("[C]ertainly where the State attaches 'a badge of infamy' to the citizen, due process comes into play."); *see also Wroblewski v. City of Washburn*, 965 F.2d 452, 456 (7th Cir. 1992) ("[D]efamation that is incident to the government's refusal to reemploy an individual can implicate a liberty interest."). Thus, Evers argues that his liberty interest in his good name is "completely independent of his contract rights."

But that is not necessarily true. For example, if SSA or its officials had—independent of any work performed under the contract—defamed Evers by accusing him of alcoholism, *see Larry v. Lawler*, 605 F.2d 954, 958 (7th Cir. 1978), it would not be an "essentially contractual" claim merely by virtue of the fact that Evers had a contract with

SSA (though without an accompanying "alteration of a legal status," such as termination of the contract by the government, the defamation alone would not implicate a liberty interest, *see Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001); *Paul v. Davis*, 424 U.S. 693, 708-10 (1976)). A closer case would be if Evers alleged that SSA defamed him by making negative false statements to third parties about his work pursuant to the contract—in the linguistic sense that claim would "relate to" the contract, but a compelling argument could be made that the claim is not "essentially contractual" because the source of Evers's rights would lie in tort. Here, however, Evers has not advanced a claim that SSA published false statements about him to third parties (*i.e.*, a tort claim for defamation); rather, he claims that SSA officers "pinned a badge of infamy" upon him *by the mere fact of terminating his contract*. Evers's complaint unambiguously states, "[SSA] has pinned a 'badge of infamy' on Evers. Evers' good name, reputation, honor and integrity is at stake because of what the [SSA] has done to him in summarily suspending him and terminating his contract and determining that he is unfit to perform his contract . . . ." Thus, it is apparent that the source of Evers's dignitary liberty interest is still the contract—he is contesting the propriety of SSA's termination of his contract by claiming that it adversely affected his reputation.

A closer reading of the complaint further reveals that Dr. Evers sought contractual remedies from SSA and its officers. Nowhere in the complaint did Evers request notice and hearing—the remedies available for a procedural due-process violation. *See Taake v. County of Monroe*, No. 07-2620, slip op. at 7 (7th Cir. June 18, 2008). In Count I

of the complaint Evers requested monetary damages, including $50,000 to compensate for his lost earnings. Evers's complaint also requested a reversal of the termination of his contract—a remedy that the district court aptly described as a request for "specific performance." Evers's counsel may have been misguided in labeling these claims as procedural due-process claims. *See id.*; *Goros v. County of Cook*, 489 F.3d 857, 860 (7th Cir. 2007) ("Plaintiffs don't want process; they want money.").

In fact, Dr. Evers's confusion over the remedies available for procedural due-process claims is evinced by his litigation strategy in his GSABCA appeal. SSA gave Evers notice of the termination of his contract through Poskocimas's letter and, through the procedure outlined by the Contracts Disputes Act, SSA afforded Evers with a formal hearing before either the GSABCA or the Federal Court of Claims. Thus, we do not understand what Evers had to gain by presenting his procedural due-process arguments to the GSABCA in the first instance—by doing so, he was effectively asking the body designated to hold a hearing on his contract claims to instead hold a hearing on whether to grant him a hearing on his contract claims. This circularity is peculiar. Perhaps Evers believes that the Contract Disputes Act provides constitutionally deficient notice and hearing—a surprising argument that we do not believe he is advancing. Or perhaps Evers believes that he was entitled to a pretermination hearing from SSA—a process that we are not convinced would have provided any additional benefit to Evers given that SSA provided him with notice, gave him an opportunity to explain his version of the altercation with Brown, met with him prior to his termination, and then afforded him a right to a formal hearing under

the Contract Disputes Act. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547-48 (1985) ("We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures . . . ."). In any case, we agree with the district court's decision to dismiss the procedural due-process claims because the source of Dr. Evers's rights was his contract with SSA, and he requested contractual remedies to vindicate those rights.

Similarly, Dr. Evers's substantive due-process claims, asserted in Count II of the complaint, "related to" his contract. Evers alleged in Count II that SSA officials overreacted and committed an "administrative tyranny . . . so arbitrary that it shocks the conscience" when they terminated his contract in response to his verbal spat with Brown. But this allegation is really just a histrionic way of arguing that SSA committed a breach of contract. Under the contract, SSA could terminate Evers for "[d]isorderly conduct, use of offensive language, quarreling, intimidation by words or actions or fighting . . . . [or] participating in disruptive activities which interfere with the normal and efficient operations of the Government." SSA and the contracting officer, Poskocimas, determined that the incident with Brown qualified as legitimate grounds for SSA to terminate the contract under the termination and removal-from-duty clauses in the contract. Evers's substantive due-process argument requires a determination of whether SSA "overreacted"—in other words, a determination of whether SSA acted *ultra vires* to its contractual authority when it terminated Evers. Thus, the source of Evers's rights (or lack thereof) is the contract, and the only possible remedy for SSA's actions would be contractual. Count II does not

raise an independent constitutional claim, but merely argues vociferously that the contract was breached. *Cf. Taake*, No. 07-2620, slip op. at 6 ("Our caselaw already explains that mere breaches of contract by the government do not support substantive due process claims under the Constitution."). We will therefore affirm the district court's dismissal of Count II pursuant to the Contract Disputes Act.

Before turning to Count III of the complaint, we briefly note that we also agree with the district court's dismissal of Counts I and II as improper *Bivens* actions. Congress has provided government contractors with adequate relief for breaches of governmental contracts under the Contract Disputes Act. As such, a government contractor need not resort to constitutional tort suits against federal officers to vindicate his rights when he feels his contract has been unfairly terminated. *See Wilkie v. Robbins*, 127 S. Ct. 2588, 2598 (2007) ("In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.").

Finally, we review the district court's decisions to dismiss the majority of Count III under the Contract Disputes Act, and then to dismiss the remaining claims as moot. To the extent that Count III of Dr. Evers's complaint, which claimed violation of federal regulations, reiterates many of the same due-process claims and seeks an investigation into and "reversal" of SSA's termination and suspension of Evers, it too falls within the jurisdictional purview of the Contract Disputes Act—the source of rights is the contract, and the remedies sought are to declare invalid or "reverse" a contractual action. *See B&B*

*Trucking*, 406 F.3d at 770 ("That the fuel plan might violate USPS regulations does not transform a claim into one that is regulatory and not contractual."); *Ingersoll-Rand Co.*, 780 F.2d at 78 ("The question presented by the complaint could be phrased as whether the contract forbids termination under these conditions. That the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations."). Indeed, if the district court had proceeded to evaluate Evers's regulatory claims, which related to his contract termination, it would have allowed Evers to circumvent the Contract Disputes Act; "because every government agency is bound to follow some set of regulations, every government contractor could recast its contract claims as regulatory claims, thereby nullifying the Contract Disputes Act." *B&B Trucking*, 406 F.3d at 770. The district court properly dismissed these claims.

But we also agree with the district court that the claims alleged in Count III that related to Dr. Evers's subsequent bids for SSA contracts do not fall under the Contract Disputes Act. Although his bids were rejected because of his prior contract termination, the sources of Evers's right to be fairly considered as a potential bidder are the federal regulations governing the rights of those who bid for government contracts. Moreover, for these claims Evers sought regulatory remedies—such as the right to be fairly considered for future contracts.

Yet these remaining claims in Count III encounter other jurisdictional hurdles. First, some of the remaining claims fail because they are not ripe. *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *see also Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007). For example, Dr. Evers requested that his

prospective employers be given good references "*in the event* Dr. Evers secures employment with another branch of [SSA], another governmental agency, or in the private sector . . . ." (emphasis added). Evers has not indicated that he has or will pursue such employment, and SSA has not stated that it will fail to provide adequate references—this claim rests upon " 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). Evers also requested that his "name be removed from the List of Parties Excluded from Federal Procurement and Nonprocurement Programs *in the event that* [SSA] has already complied with [federal regulations]." (emphasis added). Again, this claim raises an unripe claim because SSA explained that it has not placed Evers on any such list. *See id.* at 300.

Second, we agree with the district court that many of Dr. Evers's remaining claims have become moot. Mootness is a threshold jurisdictional question that insures that the court is faithful to the case or controversy limitation in Article III of the Constitution. *See Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 729 (7th Cir. 2006). A case becomes moot when a party's legally cognizable interest in the litigation ceases to exist, and the case must be dismissed for lack of jurisdiction. *See St. John's United Church of Christ*, 502 F.3d at 626; *see also Powell v. McCormack*, 395 U.S. 486, 496 (1969). A case may become moot if the court "can no longer 'affect the rights of litigants in the case.' " *Worldwide Street Preachers' Fellowship v. Peterson*, 388 F.3d 555, 558 (7th Cir. 2004) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

Among his non-contractual requests for relief, Dr. Evers asked that "an honest and fair consideration be

given by SSA to the renewal of [his] contract with [SSA] and to the other bids which Dr. Evers has submitted . . . ." But the district court noted that the contracts for which Evers bid have long since expired. Thus, Evers lacks a legally cognizable interest in the contracts and the court cannot affect his rights. *See id.*; *St. John's United Church of Christ*, 502 F.3d at 626. Moreover, the district court noted a further obstacle—Dr. Evers caused his medical license to be suspended in 2004 by failing to complete continuing-medical-education requirements and is therefore no longer qualified to bid on medical consultant contracts—a second reason why the court cannot affect his rights.

And there is yet another impediment to jurisdiction over the regulatory claims in Count III of Dr. Evers's complaint. The Administrative Dispute Resolution Act vested concurrent jurisdiction in the federal district courts and the United States Court of Federal Claims for actions "by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). However, Congress enacted a sunset provision that, absent further congressional action, would terminate the jurisdiction of district courts to hear claims under the Administrative Dispute Resolution Act filed after January 1, 2001; Congress never acted, and the jurisdiction of the federal district courts lapsed. *See* Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(d), 110 Stat. 3870, 3874-75 (codified at 28 U.S.C. § 1491(b)(1)); *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1329 n.2 (Fed. Cir. 2004);

*Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001); *Balt. Gas & Elec. Co. v. United States*, 290 F.3d 734, 737 (4th Cir. 2002).

In Count III, Dr. Evers argued that SSA violated federal regulations by rejecting his bids on subsequent contracts. This is clearly a claim "in connection with" the procurement of SSA contracts. So in addition to the constitutional ripeness and mootness barriers to jurisdiction, Congress has placed another statutory roadblock in Evers's path to the Northern District of Illinois. For this reason, and the others, the district court was on very solid ground when it dismissed the remainder of the case for lack of jurisdiction.

### III. CONCLUSION

We AFFIRM the dismissals by the district court.