In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 15-1781

GLORIA JEAN SYKES,

*Plaintiff-Appellant,*

*v.*

COOK COUNTY CIRCUIT COURT PROBATE DIVISION, et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-07459 — **John J. Tharp, Jr.**, *Judge.*

---

ARGUED APRIL 5, 2016 — DECIDED SEPTEMBER 14, 2016

---

Before WOOD, *Chief Judge,* and BAUER and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Gloria Jean Sykes went to her mother's probate proceeding to present a motion and brought her service dog, Shaggy. Instead of letting her present her motion, the judge asked her a series of questions about Shaggy, struck her motion, and entered an order barring Shaggy from the courtroom. Gloria argues that she should be able to bring a lawsuit in federal court for denial of reasonable accommodations under the Americans with Disabilities Act. But because the source of her injury is a state court judgment, we lack subject matter jurisdiction to hear her case.

## I. BACKGROUND

### A. Gloria's First Federal Lawsuit

This case originates in an earlier guardianship dispute between two sisters over their mother, Mary G. Sykes. Gloria Jean Sykes is Mary's younger daughter. Carolyn Toerpe, her older daughter, was granted guardianship of Mary in 2009. After losing the state guardianship battle, Gloria filed a lawsuit in 2011 in federal court, alleging that Toerpe, the Cook County Guardian, two participating guardians ad litem, the Cook County Circuit Court, then-Governor Quinn, and the state of Illinois were violating the ADA by refusing reasonable accommodations to her mother. Gloria alleged among other things that the state defendants were depriving her mother of the right to be present at court proceedings and to receive reasonable accommodations in the form of support and consultation with family members. The district court dismissed the lawsuit, finding that if Gloria obtained the relief she sought, it would be forced to overturn the state court decision granting guardianship to Toerpe, in violation of the *Rooker-Feldman* doctrine. It also relied on long-established precedent that federal courts may not intervene in state probate proceedings. We affirmed the dismissal of that lawsuit. *M.G.S. ex rel. Sykes v. Toerpe*, No. 12-3373, Dkt. 19 (7th Cir. Jan. 9, 2013) (unpublished order).

### B. State Probate Proceeding

After losing her federal appeal, Gloria returned to state court, pursuing her federal claims in a "Motion for Reasonable Accommodations," seeking relief both for herself and her mother in the probate proceeding. On the day the motion was scheduled for hearing, Gloria went to the Daley Center with her service dog, Shaggy, whom she uses for assistance with her post-traumatic stress disorder. She entered the building without a problem and then went up to the courtroom of Judge Aicha MacCarthy, who was presiding over Mary's probate case. Gloria alleges that Judge MacCarthy called the case,

and then "immediately, angrily, and indifferently" interrogated Gloria about her need for Shaggy. She also states that the interrogation lasted for several minutes, and at its end, MacCarthy "expelled Gloria and her dog from the courtroom—banned forever." While it's unclear what caused Gloria to think the ban was in perpetuity, the probate record reflects that Judge MacCarthy entered an order striking Gloria's motion without prejudice and prohibiting Gloria from returning with Shaggy without leave of the court.

### C. The Current Lawsuit

Gloria returned to federal court with a new complaint that recycled many of her old claims, but added one that is the focus of today's decision: she alleged that by banning Shaggy from her courtroom, various state defendants violated Gloria's rights under the Americans with Disabilities Act (ADA). The district court again dismissed all claims that Gloria asserted on behalf of her mother for largely the same reasons as the first lawsuit. It then turned specifically to Gloria's claim regarding Shaggy and concluded that it lacked subject matter jurisdiction to determine if Gloria's ADA rights were violated because she was denied use of a service animal during court proceedings. First, it held that because Gloria's claim against the state defendants was inextricably intertwined with the state court order banning Shaggy and striking Gloria's reasonable accommodation motion, as a federal court, it was barred from hearing the claim under the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Second, it held that it was barred from hearing the claim because it arose out of a state probate proceeding. And finally, it held that it should exercise *Younger* abstention because the proceeding was ongoing and because Gloria had an adequate opportunity to raise her federal claims about Shaggy in state court. *See Younger v. Harris*, 401 U.S. 37 (1971).

## II. ANALYSIS

On appeal, Gloria only challenges the district court's dismissal of her ADA claim pertaining to the use of Shaggy in Judge MacCarthy's courtroom. We review a district court's dismissal for lack of subject matter jurisdiction de novo, accept as true all facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *G&S Holdings, LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 539 (7th Cir. 2012). We may affirm a dismissal for lack of jurisdiction on any ground that the record supports. *Sladek v. Bell Mgmt. Pension Plan*, 880 F.2d 972, 979 (7th Cir. 1989).

### A.  ADA Accommodations for Service Animals

Before reaching the question of jurisdiction, it helps to understand the substantive footing of Gloria's claim. Title II of the Americans with Disabilities Act prohibits public entities (which includes instrumentalities of state and local governments, like courthouses) from discriminating against qualified individuals with disabilities. *See* 29 U.S.C. §§ 701 et seq., 42 U.S.C. § 12132. The ADA's accommodation mandate reflects enforcement efforts by Congress to ensure citizens' due process rights under the Fourteenth Amendment. *Tennessee v. Lane,* 541 U.S. 509, 523 (2004). In *Lane,* the Supreme Court considered the Title II claims of paraplegic litigants and members of the public who were forced to crawl up stairs to access a courtroom, and held that Congress was authorized to, and did, abrogate Tennessee's right to sovereign immunity in defending against the claims by passing Title II of the ADA. *Id*. at 531.

With a few exceptions, Title II requires public entities to permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go. 28 C.F.R. § 35.136(g). Service animals are defined as dogs that are individually trained to do work or perform tasks for people with disabilities. *Id*. at § 35.104. "Emotional support animals" are not considered service animals which fall under Title II's

mandate. *Id*. In situations where it is not obvious if a dog is a
service animal, employees of a public entity are permitted to
ask if the dog is a service animal required because of a disa-
bility, and what work or task the dog has been trained to per-
form. 28 C.F.R. § 35.136(f). They are not permitted to request
documentation for the dog, require the dog to demonstrate a
task, or inquire about the nature of the person's disability. *Id*.

The basis of Gloria's ADA claim on appeal is that Judge
MacCarthy and by extension, the Probate Division of Cook
County Circuit Court, asked impermissible questions to bar
Shaggy from the courtroom, and denied Gloria reasonable ac-
commodations by banning Shaggy. Gloria's complaint claims
that Shaggy is a service dog, and we will proceed on that as-
sumption for the purposes of our analysis. Because Shaggy
was banned from the courtroom, Gloria claims she was effec-
tively excluded from participating in and benefiting from ser-
vices of the courthouse. This case differs from a *Lane*-style
claim of denial of access to a courthouse, because her exclu-
sion from the courthouse stemmed from a judicial order, not
from a courthouse policy or practice.

## B.  District Court Lacked Subject Matter Jurisdiction

With her claim now framed, we must determine if the dis-
trict court had jurisdiction over Gloria's claim. At the time of
the district court's decision, Mary's probate proceeding was
ongoing. As a result, the district court applied *Younger* absten-
tion, the principle that federal courts should abstain from in-
terfering with ongoing state judicial proceedings that are ju-
dicial in nature, involve important state interests, provide an
adequate opportunity to raise federal claims, and do not con-
tain special circumstances that would make abstention inap-
propriate. *See Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662
(7th Cir. 2007). Between the district court's ruling and this ap-
peal, Mary died, so her probate proceeding is terminated. As
a result of Mary's death, *Younger* is now a moot question be-
cause there is no ongoing state proceeding for us to disturb.

The district court also invoked the probate exception to federal subject matter jurisdiction, which precludes federal courts from interfering with persons and property that are in the custody of a state probate court. *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). The rationale for the rule is that in situations where a state court controls the subject of a custody battle or the property in a decedent's estate, another court should not "be permitted to elbow its way into such a fight," particularly because state courts are assumed to have developed a core proficiency in probate and domestic relations matters. *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007). But the exception does not bar federal courts from exercising otherwise proper jurisdiction, *Marshall*, 547 U.S. at 312, and we have cautioned that as a judicially created exception to the statutory grant of diversity jurisdiction, the probate exception should be narrowly construed, *Storm v. Storm*, 328 F.3d 941, 944 (7th Cir. 2003). In determining if the probate exception applies to an issue that is ancillary to a core probate matter, we look to the policies animating the exception, including consistency of legal decisions within a state court system, judicial economy, and the relative expertise of state judges as specialists in probate issues. *Id.*

We are not convinced that applying the probate exception was appropriate under the above analysis. The decision preventing Gloria from bringing her service animal into the courtroom has nothing to do with probate law. A probate court is in no better position to determine a litigant's entitlement to a reasonable accommodation than any other court. And there is nothing about bringing her ADA claim to federal court which would create dissonance in probate or domestic relations rulings across Cook County. In short, the injury complained of here bears no relationship to probate law, other than that it happened to take place in a probate courtroom. We find this type of coincidental connection to a probate matter unpersuasive as a ground for stripping federal courts of

their power to hear federal claims. So we do not find the probate exception a persuasive ground for dismissing the case.

With those theories out of the way, we turn finally to the district court's conclusion that it lacked jurisdiction under the *Rooker-Feldman* doctrine. We start by noting that Gloria had at least three avenues to overturn Judge MacCarthy's order in state court. She could have (1) sought mandamus in the Illinois Supreme Court, *see* ILL. CONST. 1970, art. VI, § 4(a); *People ex rel. Birkett v. Konetski*, 909 N.E.2d 783, 791 (Ill. 2009), (2) pursued an interlocutory appeal in a state appellate court under Illinois Supreme Court Rule 307, or (3) filed a motion for a supervisory order under Illinois Supreme Court Rule 383. Instead of pursuing these avenues, Gloria went to federal court.

Lower federal courts are not vested with appellate authority over state courts. *Rooker,* 263 U.S. at 416; *Feldman*, 460 U.S. at 486. The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced. *Exxon-Mobil v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it. *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012). Claims that directly seek to set aside a state court judgment are *de facto* appeals which trigger the doctrine. *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004). But even federal claims which were not raised in state court, or that do not on their face require review of a state court's decision, may still be subject to *Rooker-Feldman* if those claims are inextricably intertwined with a state court judgment. *Id*. The "inextricably intertwined" determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to rem-

edy. *Id*. Because *Rooker* itself arose from a constitutional challenge to the state court's use of procedures, the *Rooker-Feldman* doctrine applies to procedural state court rulings as well as substantive ones. *See Harold v. Steel*, 773 F.3d 884, 887 (7th Cir. 2014). Further, we have held that interlocutory orders entered prior to the final disposition of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker-Feldman*. *Id.* at 886.

But *Rooker-Feldman* has its limits, and federal jurisdiction does not terminate automatically on the entry of judgment in a state court. *Exxon-Mobil*, 544 U.S. at 293. The doctrine occupies "narrow ground" and is "confined to the cases of the kind from which the doctrine acquired its name: cases brought by state-court losers … inviting district court review and rejection of [those state court's] judgments." *Id.* at 284. In order for the doctrine to apply, the state court judgment must be "inextricably intertwined" with the federal court lawsuit. In other words, there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment. *See id*. at 293; *Commonwealth Plaza Condo. Ass'n v. City of Chi.*, 693 F.3d 743, 746 (7th Cir. 2012); *see also Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 607 (7th Cir. 2008). So, for example, a state court loser is not barred from targeting a statute which has been construed against her in a state court decision, so long as she does not seek to overturn the state court judgment itself. *Skinner v. Switzer*, 562 U.S. 521, 532–33 (2011). And the Supreme Court has warned not to confuse *Rooker-Feldman* with claim preclusion: "If a federal plaintiff present[s] some independent claim that denies a legal conclusion that a state court has reached in a case to which he was a party …, then there is jurisdiction, and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. at 293. In a similar vein, non-parties are not barred from bringing a challenge to a state court judgment simply because they could be considered in privity with a party to the judgment. *Lance v. Dennis*, 546 U.S. 459, 466 (2009).

Gloria argues that the allegations in her complaint are independent from Judge MacCarthy's order because they focus on Judge MacCarthy's wrongful *conduct*—interrogating Gloria about Shaggy and banning Shaggy from the courtroom—and not her *order* denying Gloria's motion for reasonable accommodations. We addressed a similar argument in *Kelley v. Med-1 Solutions*, where the plaintiff argued it was not the state court's award of attorneys' fees which caused his injury, but rather the attorneys' preceding fraudulent misrepresentations which led to the erroneous award. 548 F.3d at 605. We found that we lacked jurisdiction to hear the claim because in order to find that the defendants' underlying representations violated the law, we would be forced to determine that the state court, which evaluated those representations, erred in its judgment granting the attorneys' fees. *Id*. Similarly here, the result of Judge MacCarthy's alleged misconduct was a state court order explicitly banning Gloria's service animal from her courtroom. If the judge violated the ADA by engaging in impermissible questioning or wrongly banning Shaggy from her courtroom, those alleged violations were also the basis of her order.

In her response to the defendants' motion to dismiss, Gloria attached an affidavit advancing a new theory that she was not attacking the order but instead a policy, practice or custom of ADA violations by Judge MacCarthy. She tried again to frame her challenge as distinct from the previous order banning Shaggy, by pointing to fresh violations when she returned to the courtroom with Shaggy a few weeks after the order was entered. Her affidavit included allegations that Judge MacCarthy dismissed Shaggy as "just a pet" and accused Gloria of not having a disability. This information was ostensibly offered to show that Gloria suffered a series of violations, and the order was simply incidental to them. But even if we could consider the affidavit, it also states that the judge expressed anger because she did not *follow* the previous

order, which only reinforces the conclusion that the initial order was a direct result of the judge's preliminary inquiry and subsequent ban.  In sum, to provide any relief in response to the harm stemming from Judge MacCarthy's acts, her court order banning Shaggy would need to be set aside. The proper way to challenge the court order was through state court avenues.

*Rooker-Feldman* will not always bar a litigant from bringing claims against a state court for denial of reasonable accommodations. If the Daley Center had a policy of banning service animals, Gloria's claim may have survived dismissal. *Lane* comes to mind as an example of an injury that occurred as a result of a litigant's participation in a judicial proceeding, but was not inextricably intertwined with it. But when as in this case the injury is executed through a court order, there is no conceivable way to redress the wrong without overturning the order of a state court. *Rooker-Feldman* does not permit such an outcome.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal for lack of subject matter jurisdiction.