> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 4, 2019
Decided March 10, 2020

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE , *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1838

| | |
|---|---|
| ALI ALKADY, *et al.*, <br>     *Plaintiffs-Appellants*, <br><br> *v.* <br><br> CORINNA LUNA, *et al.*, <br>     *Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. <br><br> No. 1:18-CV-1-TLS <br><br> Theresa L. Springmann, <br> *Chief Judge*. |

## O R D E R

Ali Alkady filed I-130 Petitions for Alien Relatives for three of his alleged children in 2000. Nearly two decades later, having received no decisions, Alkady and the three sued for mandamus and other relief. Defendants[1] moved to dismiss because the government already denied the petitions in 2003. The district court dismissed the

---

[1] Alkady named as Defendants: Corinna Luna, Los Angeles Field Office Director for USCIS; Lee Cisna, Director of USCIS; and Elaine Dukes, Acting Director of DHS.

case for mootness and the resulting lack of standing and lack of subject matter jurisdiction. We affirm.

## I.

Via I-130, a United States citizen may petition the government to allow a family member to apply for lawful permanent resident status. The petitioner must establish his claimed relationship to the alien beneficiary. Ali Alkady is a naturalized United States citizen from Yemen. In 2000 he filed three I-130 petitions with the United States Immigration and Naturalization Service—one for each of three of his alleged children: Sami, Adel, and Yasser[2] Alkadi. But then he waited. For years the government's website showed the petitions as pending and active.[3]

The Homeland Security Act of 2002 abolished the Immigration and Naturalization Service, effective March 1, 2003. 6 U.S.C. § 291(a). This Act also established the Bureau of Citizenship and Immigration Services (USCIS), which assumed responsibility for immigration adjudication.

In 2013, Alkady filed another petition on behalf of Sami. This petition listed an address in New York for Alkady. This petition said the 2000 petition for Sami was withdrawn because "they decided to stay in Saudi Arabia." In 2017, the government sent Alkady (at an address in Fort Wayne, Indiana) a Request for Evidence (RFE) regarding the 2013 petition. Alkady apparently responded from that address. USCIS allegedly directed Alkady to attend an interview on the 2013 petition, and denied that petition when he did not appear.[4]

## II.

Finally, in 2018, Alkady and his three alleged children sued. They claimed the government failed to render a full and proper adjudication of the three 2000 petitions.

---

[2] The captions of the original and amended complaints spell this name "Yeasser." But the bodies of these pleadings say "Yasser." Appellants' brief has the same discrepancy between its caption and body. The relevant I-130 and birth certificate say "Yasser."

[3] Appellees admitted in their appellate brief filed in September 2019 that the government's website *still* indicated the cases remain pending. Appellees also noted the website's entries for the three 2000 petitions showed Requests for Evidence were sent on December 2, 2002. At oral argument, counsel for Appellees said the government finally updated the website's indication of the petitions' status. She also argued the website's notification of the 2002 RFEs undermines Appellants' claimed reliance on the website's indication the petitions remained pending. But we need not rely on this argument.

[4] The 2013 petition is not at issue in this case. Why Alkady did not bring this case earlier remains a mystery. But we need not solve this mystery to resolve this case.

They claimed the government made no decisions on these petitions. (They did not bring claims related to the 2013 petition.)

Defendants moved to dismiss for lack of subject matter jurisdiction due to mootness because the government already adjudicated the petitions. Defendants alleged the government issued RFEs on December 2, 2002, regarding Alkady's relationship to the beneficiaries, their birth dates, and their identities. Defendants alleged the government denied the petitions on June 26, 2003, on their merits as filed, after it received no response to the RFEs. Defendants attached copies of three denial letters allegedly sent to Alkady at the Dearborn, Michigan address he provided in the petitions.

Plaintiffs responded by amending their pleading. They dropped the original pleading's specific allegation that no decisions were made on their three 2000 petitions. Instead, Plaintiffs alleged they had not received any RFEs or decisions on these petitions. But the amended pleading maintained the original allegation that Defendants "failed to issue" decisions on the petitions.[5] The amended pleading also maintained the original allegations that the government had not completed a *full and proper* adjudication of the petitions and Defendants had withheld clear, nondiscretionary duties to adjudicate the petitions and notify Plaintiffs of any decision. Plaintiffs added allegations that the government subjected petitions filed by people from Yemen to a different, unlawful adjudication scheme.

The amended complaint purported to state eight claims. Count I asked the district court to compel Defendants to render a "proper and complete decision" on the three 2000 petitions. Count II asked the court to compel proper agency action and to set aside unlawful agency action. Count III alleged Defendants' "unlawful Yemeni I-130 adjudicative scheme" caused Plaintiffs "to suffer irreparable harm and damage entitling them to declaratory, injunctive and other relief." Count IV purported to state a "substantive" due process claim for depriving Plaintiffs of their "liberty interest in making personal choices regarding family matters … ." Count V purported to state a "procedural" due process claim for the "unreasonable delay" in adjudicating the 2000 petitions. Count VI alleged Defendants discriminated against Muslim petitions, including Plaintiffs' 2000 petitions. Count VII alleged a conspiracy to interfere with civil rights, and claimed this conspiracy "resulted in the death of his United States citizen

---

[5] Perhaps Alkady and his alleged children draw a distinction between *deciding* and *issuing a decision*. In any event, as we will see, they subsequently clarified they admit the government made decisions about the three 2000 petitions, and contend these decisions were unlawful.

child." Count VIII sought a declaration Defendants violated the Immigration Nationality Act and other federal laws.

Defendants again moved to dismiss all claims for mootness, lack of standing, and lack of subject matter jurisdiction. Defendants alleged discrepancies and evidentiary inadequacies plagued all three 2000 petitions. So in 2002, the government mailed three RFEs to Alkady at his last-known address: the Dearborn, Michigan address he listed on the three 2000 petitions. Alkady failed to respond, so the government denied these petitions in 2003. Defendants argued the case was moot because Alkady was asking the court to order the government to process petitions it had already processed to disposition. Defendants also raised arguments supporting dismissal for failure to state a claim. Alkady responded by again denying he ever received the 2002 RFEs or the 2003 denial notices.

The district court dismissed all claims for lack of subject matter jurisdiction given mootness and the resulting lack of standing. We review dismissal for lack of subject matter jurisdiction *de novo*. *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008). Like the district court, we must accept as true all well-pleaded factual allegations and draw all reasonable inferences in Plaintiffs' favor, but we may look beyond the complaint. *Id.* at 656–57. We may affirm dismissal on any ground supported by the record. *Haywood v. Massage Envy Franchising*, 887 F.3d 329, 332–33 (7th Cir. 2018); *Sykes v. Cook Cty. Circuit Court*, 837 F.3d 736, 740 (7th Cir. 2016). Indeed, even if neither party nor the district court mentioned any problem with subject matter jurisdiction, we would still evaluate it *sua sponte* on appeal. *Buchel-Ruegsegger v. Buchel*, 576 F.3d 451, 453 (7th Cir. 2009).

## III.

Federal courts have only limited jurisdiction. U.S. Const. art. III, § 2, cl. 1. Federal judicial power extends only to certain cases and controversies. *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (2018). Cases that do not involve actual, ongoing controversies are moot and must be dismissed for lack of jurisdiction. *Home Care Providers v. Hemmelgarn*, 861 F.3d 615, 620 (7th Cir. 2017).

Here, Alkady concedes the government disposed of his three 2000 petitions (but argues the disposal was unlawful).[6] He denies ever receiving the 2002 RFEs or the 2003 denial notices (until this litigation). But he never denied the government mailed them to

---

[6] *See, e.g.*, Appellants' Br. at 2, 9; Oral Argument at 11:34, http://media.ca7.uscourts.gov/sound/2019/pnr.19-1838.19-1838_12_04_2019.mp3; *Alkady v. Luna*, No. 1:18-CV-1-TLS, 2019 WL 984233, at *3 (N.D. Ind. Feb. 28, 2019) ("Nor do they deny that the USCIS denied their 2000 Petitions in 2003.").

his last-known address. Nor did he ever deny this was the proper address. Significantly, he never claimed he moved and notified the government of an address change. He never claimed the government mailed the documents to the wrong address or had a duty to investigate and track him. He never claimed the government received any sort of return-to-sender notice or had any other reason to know he did not receive the RFEs. He never pointed to any requirement for the government to provide further notice in this situation.

Instead, he merely denied receiving the RFEs, and asserted the Defendants' claim that the government sent them to him is "utterly false." But the government had no absolute duty to send the documents to *him* if it sent them to his last-known address and had no reason to know he did not receive them.

Alkady has not offered any reason to think mailing the RFEs to his last-known address was insufficient here.[7]  Due process requires notice and an opportunity to be heard. *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 (7th Cir. 2019). Notice must be reasonably calculated to reach the intended recipient. *See Mullane v. Cent. Hanover Bank Trust Co.*, 339 U.S. 306, 315 (1950) ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."); *see also Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt.*, 646 F.3d 401, 406 (7th Cir. 2011) ("The duty is to employ a method of notice that is reasonably calculated to reach the intended recipient, and sometimes entirely proper notice fails to do so."). The Supreme Court recognizes that "reasonable risks that notice might not actually reach every beneficiary are justifiable." *Mullane*, 339 U.S. at 319.

Here, it is uncontested the government sent the RFEs to Alkady's address of record, his last-known address. Alkady does not claim the government had any reason to doubt he received them. Mail is generally sufficient for notice absent a reason to think the target did not receive the mail or a rule requiring different methods. The Supreme Court recognizes mail provides an "'efficient and inexpensive means of communication' … upon which prudent men will ordinarily rely in the conduct of important affairs … ." *Greene v. Lindsey*, 456 U.S. 444, 455 (1982) (quoting *Mullane*, 339 U.S. at 319).

Alkady points to *Caplash v. Johnson*, 230 F. Supp. 3d 128 (W.D.N.Y. 2017), for the proposition that failing to provide proper notice of an RFE and then denying a petition for failure to respond to the RFE violates due process. That proposition is unassailable. But the question is: what is proper notice? *Caplash* grounded its conclusion that the

---

[7] *See* 8 C.F.R. § 103.5a(a)(1) (2002) ("Routine service consists of mailing a copy by ordinary mail addressed to a person at his last known address.").

government did not provide proper notice on facts distinguishable from ours. There, the court concluded the government was required to pursue additional steps to notify the plaintiff of the RFE before denying his petition because the government was "specifically aware that [Caplash] would not receive the notice to supply the additional requested evidence or the denial of his petition such that he could move to reopen his case in a timely manner." *Caplash*, 230 F. Supp. 3d at 141.

Caplash filed an I-130 petition on behalf of his brother. Caplash then moved but did not give a new address to USCIS. USCIS mailed a notice to Caplash's last-known address, but it was returned to USCIS as undeliverable, with a handwritten note: "Moved out at least 10 months ago (if he/she ever lived here)."

Apparently undaunted, USCIS then mailed an RFE to the same address, which was returned with another handwritten note: "moved years ago."

About two months later, USCIS, still unphased, sent to the same address a notice denying the I-130 petition for failure to respond to the RFE. This denial notice was returned with yet another handwritten note: "MOVED LONG AGO … AWAY."

The record showed USCIS made no attempt to find Caplash before denying his petition. USCIS denied the petition due to his failure to respond to an RFE that USCIS *knew* he never received. *Caplash*, 230 F. Supp. 3d at 135. So USCIS failed to employ a method of notice reasonably calculated to reach the intended recipient. The court held USCIS was "required to pursue additional reasonable steps to notify [Caplash] of the RFE before terminating his pending petition because [it was] specifically aware that [Caplash] would not receive" the RFE. *Id.* at 141.

But here, Appellants do not even claim the government had any reason to doubt Alkady received the RFEs. Having no reason to doubt, the government had no duty to take further steps to ensure notice.

## IV.

Appellants do not deny that the information provided regarding the beneficiaries was inconsistent or incomplete, that sending RFEs when presented with inconsistent information is lawful, that the government mailed the RFEs to Alkady's last-known address, that the government had no reason to doubt Alkady received them, that under these circumstances the government had no duty to investigate Alkady's whereabouts or provide further notice, that Alkady never responded, that the government denied the petitions, that inconsistent or incomplete information (or failure to respond to RFEs) are legitimate grounds for denial, or that the actual time frames alleged by Appellees were lawful.

Thus, Appellants' claims premised on lack of an adjudication are moot and Appellants' other allegations fall for failure to state a claim. Appellants never claimed anything capable of enabling any of their non-moot allegations to survive. The government's website was wrong for many years. But that has no bearing on the uncontested facts.[8]  We AFFIRM.

---

[8]  Appellants also argued the denials of the three 2000 petitions were unlawful because Immigration and Naturalization Service apparently issued the denials after it ceased existing and USCIS took over. But Appellants made this argument for the first time at oral argument, so we decline to address it. Several possibilities might explain this apparent discrepancy, but we decline to speculate.