In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 21-3373
ANETA HADZI-TANOVIC, individually
and as natural mother and next friend
for SP, MP and KP, all minors,
 Plaintiff-Appellant,

 v.

ROBERT W. JOHNSON,
DAVID PETER PASULKA, and
SLOBODAN M. PAVLOVICH,
 Defendants-Appellees.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Eastern Division.
 No. 1:20-cv-03460 — John J. Tharp, Jr., Judge.
 ____________________

 ARGUED OCTOBER 26, 2022 — DECIDED MARCH 14, 2023
 ____________________

 Before ROVNER, HAMILTON, and BRENNAN, Circuit Judges.
 HAMILTON, Circuit Judge. This case arises out of a custody
dispute between plaintiﬀ Aneta Hadzi-Tanovic and her for-
mer husband, defendant Slobodan Pavlovich, in an Illinois
state court. After the state court issued an order requiring that
2 No. 21-3373

Hadzi-Tanovic’s parenting time with her children be super-
vised, she ﬁled this action in federal court. She brings claims
under 42 U.S.C. §§ 1983 and 1985 against her ex-husband, the
children’s guardian ad litem, and the state court judge. She
alleges the three conspired to violate her and her children’s
rights to family association and her right to a fair and unbi-
ased trier of fact. The district court dismissed her complaint
on abstention grounds. Hadzi-Tanovic v. Johnson, 2021 WL
5505541 (N.D. Ill. Nov. 24, 2021). Hadzi-Tanovic has appealed.
 Hadzi-Tanovic’s is the latest case in which a losing party
in a state court divorce proceeding seeks to continue the liti-
gation in federal court. We acknowledge the high stakes in-
volved in divorce and custody disputes. We understand the
natural temptation for losing parties to keep ﬁghting and to
look for new forums. Nevertheless, it is well established that
federal district and circuit courts do not have jurisdiction to
review such state court decisions. This appeal presents two
recurring questions in applying this jurisdictional doctrine,
known as the Rooker-Feldman doctrine, to divorce proceed-
ings. 1
 The ﬁrst concerns the Rooker-Feldman ﬁnality requirement
as applied to divorce cases in which a state court provides on-
going supervision of a family, especially concerning child cus-
tody and visitation issues. The second concerns whether
claims that state courts are corrupt can avoid application of
the Rooker-Feldman doctrine. As we explain below, on the ﬁrst
point, the state court order that Hadzi-Tanovic challenges

 1 The doctrine takes its name from Rooker v. Fidelity Trust Co., 263 U.S.

413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462
(1983).
No. 21-3373 3

here is ﬁnal, so the Rooker-Feldman doctrine may apply to her
attempt to have the federal courts review it. On the second
point, we conclude that allegations of state court corruption
are not suﬃcient to avoid application of the Rooker-Feldman
doctrine. We also expressly overrule holdings in a handful of
our prior cases to the eﬀect that a party who loses in state
court can avoid Rooker-Feldman by alleging that the state
courts who ruled against her were corrupt, or at least suﬃ-
ciently corrupt. We aﬃrm the dismissal of this action.
I. Factual and Procedural Background
 Hadzi-Tanovic’s complaint alleges the following facts,
which we accept as true for purposes of deciding whether we
have subject matter jurisdiction, at least in the absence of de-
bates over facts aﬀecting jurisdiction. E.g., Evers v. Astrue, 536
F.3d 654, 656–57 (7th Cir. 2008); see generally McNutt v. Gen-
eral Motors Acceptance Corp., 298 U.S. 178, 184 (1936); Long v.
Shorebank Development Corp., 182 F.3d 548, 554 (7th Cir. 1999)
(applying Rooker-Feldman doctrine; district court may look be-
yond jurisdictional allegations of complaint and consider ev-
idence and decide factual issues aﬀecting jurisdiction).
 A. State Court Proceedings
 Defendant Pavlovich ﬁled for divorce in an Illinois state
court in October 2014. Hadzi-Tanovic and Pavlovich each ac-
cused the other of abusing their three minor children. On Au-
gust 29, 2016, the court appointed defendant David Pasulka
as guardian ad litem for the children. The case was assigned
to defendant Judge Robert Johnson on March 15, 2017.
 Hadzi-Tanovic and Pavlovich agreed to terms that split
custody ﬁfty-ﬁfty, and on July 25, 2017, Judge Johnson en-
tered a ﬁnal judgment of dissolution of their marriage. Hadzi-
4 No. 21-3373

Tanovic appealed the judgment of dissolution, and the Illinois
appellate court aﬃrmed. In re Marriage of Pavlovich, 133 N.E.3d
1, 14 (Ill. App. 2019).
 That decision did not end the couple’s disagreements.
Hadzi-Tanovic and Pavlovich continued to ﬁght about their
children, including their participation in school band and or-
chestra. Hadzi-Tanovic alleges that Pavlovich abused their
son after he expressed his desire to participate in band. In Jan-
uary 2018, she took her son to the police station to report the
alleged abuse. As required by state law, the police in turn re-
ported the allegations to the Illinois Department of Children
and Family Services, which directed the children’s school not
to release the children to Pavlovich.
 In response, on February 13, 2018, Pavlovich ﬁled an emer-
gency motion seeking either to suspend Hadzi-Tanovic’s par-
enting time or to require that her parenting time be super-
vised on the ground that she interfered with his parenting
time. At a hearing the next day, guardian ad litem (and de-
fendant here) Pasulka testiﬁed that, in his opinion, Pavlovich
posed no threat to his children. Judge Johnson ordered that
Pavlovich’s parenting time be made up and that Hadzi-Ta-
novic not interfere with his parenting time.
 Also on February 14, 2018, Pavlovich sought court relief
for what he alleged had been Hadzi-Tanovic’s interference
with his parenting time. Judge Johnson set a hearing, for
which Pasulka submitted a report. In his report, Pasulka ex-
plained that he believed that Hadzi-Tanovic had pressured
the children to lie about Pavlovich’s supposed abuse. Pasulka
recommended that Judge Johnson revoke Hadzi-Tanovic’s
right to weekday visitation. On May 3, 2018, Judge Johnson
No. 21-3373 5

found Hadzi-Tanovic in indirect civil contempt for interfering
with Pavlovich’s parenting time.
 After Hadzi-Tanovic was found in contempt, Pavlovich
ﬁled another petition seeking to restrict Hadzi-Tanovic’s par-
enting time. Judge Johnson held another hearing, and Pasulka
testiﬁed that, in his opinion, Hadzi-Tanovic’s parenting time
should be supervised. On June 13, 2018, Judge Johnson or-
dered that all of Hadzi-Tanovic’s parenting time be super-
vised after ﬁnding that she had “engaged in conduct that se-
riously endangered the parties’ minor children’s mental and
moral health and signiﬁcantly impaired the children’s emo-
tional development.” Hadzi-Tanovic ﬁled a notice of appeal,
but after she failed to ﬁle an opening brief, the appellate court
dismissed the appeal in January 2020.
 In July 2020, the Illinois Attorney Registration and Disci-
plinary Commission (ARDC) ﬁled an ethics complaint against
Pasulka accusing him of sexual abuse, some instances of
which related to his duties as guardian ad litem. Following
these accusations, Hadzi-Tanovic ﬁled a petition in state court
requesting that all orders in her case entered after April 20,
2017 be vacated. She ﬁled her petition under section 2-1401 of
the Illinois Code of Civil Procedure, 735 Ill. Comp. Stat. 5/2-
1401, which allows collateral challenges to otherwise ﬁnal
judgments. See In re Marriage of Labuz, 54 N.E.3d 886, 896 (Ill.
App. 2016). At the time briefs were ﬁled in this court, Hadzi-
Tanovic’s motion to vacate remained pending in state court.
 B. Hadzi-Tanovic’s Federal Lawsuit
 On June 12, 2020, Hadzi-Tanovic sued Judge Johnson,
guardian ad litem Pasulka, and ex-husband Pavlovich in fed-
eral court. She brought two federal conspiracy claims, under
6 No. 21-3373

42 U.S.C. §§ 1983 and 1985(3), as well as state law claims for
abuse of process and intentional inﬂiction of emotional dis-
tress. In her complaint, Hadzi-Tanovic alleged that the de-
fendants conspired to deprive her and her children of their
right to familial association in violation of the Fourteenth
Amendment’s Due Process clause. She also alleged that the
defendants had conspired to corrupt the state court divorce
proceedings, violating her right to a fair tribunal under the
Fourteenth Amendment’s guarantee of due process of law.
She sought compensatory and punitive damages.
 All three defendants moved to dismiss for failure to state
a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).
Judge Johnson also moved to dismiss for lack of subject matter
jurisdiction under Federal Rule of Civil Procedure 12(b)(1).
The district court declined to exercise jurisdiction on absten-
tion grounds and granted Judge Johnson’s motion.
 In his motion to dismiss, Judge Johnson invoked several
doctrines that restrict access to the federal courts: Rooker-Feld-
man, abstention under Younger v. Harris, 401 U.S. 37 (1971),
and the domestic-relations exception to federal jurisdiction.
The district court concluded that none of these doctrines was
a “perfect ﬁt for the facts of this case,” but it concluded that
dismissal was warranted on general abstention principles.
Hadzi-Tanovic, 2021 WL 5505541, at *4.
 The court reasoned that the Rooker-Feldman doctrine did
not apply for two reasons. First, the court questioned whether
Hadzi-Tanovic’s suit concerned a ﬁnal order, as Rooker-Feld-
man requires, given both the state court’s ongoing supervision
of custody and child support arrangements and her pending
motion for relief from the June 13, 2018 order. Second, relying
on this court’s decisions in Nesses v. Shepard, 68 F.3d 1003 (7th
No. 21-3373 7

Cir. 1995), and Loubser v. Thacker, 440 F.3d 439 (7th Cir. 2006),
the court concluded that Rooker-Feldman did not bar Hadzi-
Tanovic’s suit because she alleged corruption in the state
court proceedings. The court also concluded that Younger ab-
stention, the domestic-relations exception, and Burford ab-
stention (see Burford v. Sun Oil Co., 319 U.S. 315 (1943)) did not
apply to the facts of this case. 2021 WL 5505541, at *5.
 The district court concluded that abstention was neverthe-
less appropriate. The court wrote that ﬁnding in Hadzi-Ta-
novic’s favor would require the federal court to “examine and
criticize” the state court’s application of family law and to ﬁnd
that oﬃcial actions of the state court judge and guardian ad
litem were part of a conspiracy. A judgment in Hadzi-Ta-
novic’s favor could then be used to interfere with the state
court proceedings, and that, the court concluded, would be an
“unacceptable intrusion into the domain of the state domestic
relations court.” 2021 WL 5505541, at *6. The court entered a
ﬁnal judgment dismissing Hadzi-Tanovic’s case without prej-
udice.
II. Analysis
 Our analysis begins with appellate jurisdiction. Many dis-
missals of civil cases without prejudice are not appealable, but
the dismissal here was ﬁnal and appealable because the dis-
trict court entered a ﬁnal judgment on a basis that “eﬀectively
precludes re-ﬁling” in federal court. Lee v. Cook County, 635
F.3d 969, 972 (7th Cir. 2011); accord, Nuñez v. Indiana Dep’t of
Child Servs., 817 F.3d 1042, 1044 (7th Cir. 2016).
 We next focus on subject matter jurisdiction. If the federal
courts lack subject matter jurisdiction, then we can go no fur-
ther and must dismiss the suit. Jakupovic v. Curran, 850 F.3d
8 No. 21-3373

898, 902 (7th Cir. 2017). Under the Rooker-Feldman doctrine,
the federal courts have no jurisdiction over Hadzi-Tanovic’s
claims, so we aﬃrm the district court’s dismissal.
 The Rooker-Feldman doctrine is an important foundation
for the division of power between federal and state courts.
The doctrine imposes a “jurisdictional bar” that prohibits fed-
eral courts other than the Supreme Court of the United States
from reviewing ﬁnal state court judgments. Andrade v. City of
Hammond, 9 F.4th 947, 948 (7th Cir. 2021). The doctrine reﬂects
the fact that “[l]ower federal courts are not vested with appel-
late authority over state courts.” Sykes v. Cook County Circuit
Court Prob. Div., 837 F.3d 736, 741 (7th Cir. 2016). Conse-
quently, “no matter how wrong a state court judgment may
be under federal law,” Rooker-Feldman acknowledges that
“only the Supreme Court of the United States has jurisdiction
to review it.” Id. at 742.
 Rooker-Feldman applies to “cases brought by state-court
losers complaining of injuries caused by state-court judg-
ments rendered before the district court proceedings com-
menced and inviting district court review and rejection of
those judgments.” Exxon Mobil Corp. v. Saudi Basic Industries
Corp., 544 U.S. 280, 284 (2005). The doctrine is limited to fed-
eral claims that “‘directly’ challenge a state court judgment or
are ‘inextricably intertwined with one.’” Andrade, 9 F.4th at
950, quoting Swartz v. Heartland Equine Rescue, 940 F.3d 387,
391 (7th Cir. 2019). To determine whether a plaintiﬀ’s federal
claims are inextricably intertwined with the state court judg-
ment, we ask whether the plaintiﬀ alleges an injury “caused
by the state court judgment.” Sykes, 837 F.3d at 742. Put an-
other way, we ask “whether the district court is essentially be-
ing called upon to review the state court decision.” Jakupovic,
No. 21-3373 9

850 F.3d at 902. If not, and if the plaintiﬀ’s alleged injury is
“independent” of the judgment, then Rooker-Feldman does not
bar federal court jurisdiction. Andrade, 9 F.4th at 950. Finally,
Rooker-Feldman applies only where the federal “plaintiﬀ had a
reasonable opportunity to raise the [federal] issue in state
court proceedings.” Jakupovic, 850 F.3d at 902. We consider
these requirements in turn.
 A. Final State Court Judgment
 The challenged state court judgment in this case was “ren-
dered before the district court proceedings commenced,” so
that Hadzi-Tanovic was a “state-court loser.” Judge Johnson
issued his order requiring that her parenting time be super-
vised on June 13, 2018. Hadzi-Tanovic ﬁled a notice of appeal,
but the Illinois appellate court dismissed her appeal for want
of prosecution on January 13, 2020. Judge Johnson’s order was
therefore ﬁnal well before Hadzi-Tanovic ﬁled this federal
lawsuit on June 12, 2020. See Parker v. Lyons, 757 F.3d 701, 705–
06 (7th Cir. 2014) (holding that Rooker-Feldman does not apply
if state court appeal of challenged judgment is pending when
federal suit is ﬁled).
 The district court questioned on two grounds whether the
order was ﬁnal. First, the court noted that the order might not
be ﬁnal given the state court’s “continuing management” of
child custody issues. We understand the concern, but Hadzi-
Tanovic is challenging an order that was ﬁnal when she ﬁled
this federal lawsuit. “State law determines the ﬁnality of a
state judicial decision.” Mehta v. Attorney Registration & Disci-
plinary Comm’n, 681 F.3d 885, 887 (7th Cir. 2012) (ﬁnding that,
because state law so provided, a state court “interim” order
suspending plaintiﬀ’s attorney license was ﬁnal for purposes
of Rooker-Feldman). Here, the June 13, 2018 order was entered
10 No. 21-3373

pursuant to the Illinois Marriage and Dissolution of Marriage
Act, 750 Ill. Comp. Stat. 5/603.10, and “supersede[d]” the cou-
ple’s prior allocation judgment. As such, the order was a ﬁnal
judgment immediately appealable under Illinois Supreme
Court Rule 304(b)(6), which permits appeals from a “custody
or allocation of parental responsibilities judgment or modiﬁ-
cation of such judgment” entered pursuant to the Marriage
Act. See Ill. Sup. Ct. R. 304 (“Appeals from Final Judgments
that do not Dispose of an Entire Proceeding”). Judge John-
son’s June 13, 2018 order was therefore ﬁnal for Rooker-Feld-
man purposes even though the state court may modify the or-
der in the future. 2

 2 State courts often enter non-final orders as part of their management

of divorce and custody proceedings. In Illinois, for example, a court may
enter a temporary allocation of parental responsibilities before a final al-
location judgment is entered. 750 Ill. Comp. Stat. 5/603.5(a). Such orders
are not final and therefore not automatically appealable, though a party
may petition the appellate court for leave to file an interlocutory appeal.
Ill. Sup. Ct. R. 306(a)(5). Where Rooker-Feldman does not apply because of
a lack of final judgment, other doctrines usually apply to block federal ju-
risdiction to review such orders in divorce cases. Federal jurisdiction will
in some cases be barred by Younger abstention or the domestic-relations
exception. See, e.g., Brunken v. Lance, 807 F.2d 1325, 1330–31 (7th Cir. 1986)
(Younger abstention barred consideration of father’s claims that his due
process rights were violated when he was not given notice of a hearing to
place his daughter in protective custody after he was accused of abusing
her); Allen v. Allen, 48 F.3d 259, 261 (7th Cir. 1995) (domestic-relations ex-
ception barred district court from exercising jurisdiction over husband’s
suit challenging state visitation and custody orders); see generally Younger
v. Harris, 401 U.S. 37 (1971). And, in domestic relations cases where no
abstention doctrine fits exactly, we have held that abstention is neverthe-
less appropriate where federal jurisdiction “threaten[s] interference with
and disruption of local family law proceedings.” J.B. v. Woodard, 997 F.3d
714, 723 (7th Cir. 2021).
No. 21-3373 11

 Second, the district court also questioned whether the
June 13, 2018 order should be considered ﬁnal given Hadzi-
Tanovic’s pending motion to vacate in response to the
ARDC’s charges against guardian ad litem Pasulka. The mo-
tion to vacate does not defeat application of Rooker-Feldman.
After the ARDC ﬁled its complaint against Pasulka in July
2020, Hadzi-Tanovic ﬁled a section 2-1401 petition to vacate
the June 13, 2018 order and all other orders entered in her case
after April 20, 2017. See 735 Ill. Comp. Stat. 5/2-1401. Section
2-1401 petitions are treated as collateral attacks on ﬁnal judg-
ments; they are not direct appeals. People v. Mathis, 827 N.E.2d
932, 936 (Ill. App. 2005); 735 Ill. Comp. Stat. 5/2-1401(a)
(providing relief “from ﬁnal orders and judgments”). A peti-
tion under section 2-1401 must be ﬁled “in the same proceed-
ing in which the order or judgment was entered but is not a
continuation thereof.” 735 Ill. Comp. Stat. 5/2-1401(b). To the
contrary, a section 2-1401 petition “commences a new and
separate cause of action.” Price v. Philip Morris, Inc., 43 N.E.3d
53, 60 (Ill. 2015). Because Hadzi-Tanovic’s section 2-1401 peti-
tion is a collateral attack and not a direct appeal, it did not
alter the ﬁnality of Judge Johnson’s June 13, 2018 order for
purposes of the Rooker-Feldman doctrine.
 B. Independent Injury
 Next, we consider whether Hadzi-Tanovic has alleged an
injury independent of the state court judgment. Her com-
plaint identiﬁes two injuries: the deprivation of her and her
children’s right to familial association and the deprivation of
her right to a fair and unbiased trier of fact.
12 No. 21-3373

 1. Familial Association
 The plaintiﬀs’ alleged loss of familial association is not an
injury independent of the state court judgment. The com-
plaint traces plaintiﬀs’ alleged injury directly to Judge John-
son’s June 13, 2018 order: “By this June 13, 2018 ruling,
[Hadzi-Tanovic] suﬀered severe damages from the loss of her
parenting time that caused her to lose the companionship,
love and aﬀection of her three minor children and the three
minor children lost their right to be raised by their mother in
a normal family home.” Where, as here, the plaintiﬀ’s injury
is “eﬀectuated” by the state court judgment, the Rooker-Feld-
man doctrine deprives lower federal courts of jurisdiction.
Swartz, 940 F.3d at 391. For a federal court to ﬁnd that the state
court deprived plaintiﬀs of their constitutional right to famil-
ial association, the federal court would have to ﬁnd that the
state court erred in applying state family law. This Rooker-
Feldman forbids. See id. (Rooker-Feldman barred jurisdiction
where ﬁnding for plaintiﬀs, who alleged that their animals
were seized in violation of Fourth and Fourteenth Amend-
ments, would “call into question the state court’s judgment
that there was probable cause the animals were being ne-
glected”).
 2. Fair and Unbiased Trier of Fact
 Hadzi-Tanovic also argues that she was injured when the
defendants “corruptly conspired” to interfere with her right
to a fair and impartial trier of fact. She alleges that Judge John-
son’s rulings showed “outrageous, unconstitutional, inten-
tional bias.” For example, she complains that Judge Johnson
scheduled immediate hearings for motions ﬁled by Pavlovich,
but scheduled hearings far into the future on motions she
ﬁled, giving her ex-husband an unfair advantage. She also
No. 21-3373 13

criticizes Judge Johnson’s alleged refusal to consider evidence
she oﬀered. In support of her claim that the defendants con-
spired together to corrupt the proceedings, she alleges that
“unlawful extrajudicial and ex parte communications” took
place between Pasulka and Judge Johnson and that Pasulka’s
testimony was “unrealistic, unbelievable and clearly false.”
As noted above, we must treat these allegations as true for
purposes of this appeal.
 Hadzi-Tanovic argues that, because she claims to have
been injured by defendants’ corruption of the state court pro-
ceedings, her injury is independent of the state court judg-
ment for purposes of Rooker-Feldman. This theory would seem
to open a large loophole in the Rooker-Feldman doctrine, and it
has not been endorsed by the Supreme Court. Nevertheless,
Hadzi-Tanovic ﬁnds some support in several decisions from
this court beginning with Nesses v. Shepard, and these cases
understandably led the district court to decline to rely on the
Rooker-Feldman doctrine. We have reviewed these cases care-
fully and conclude here that the holdings in Nesses and
Loubser, as well as Parker v. Lyons, recognizing a “corruption
exception” to Rooker-Feldman should be overruled.
 Starting with Nesses, the plaintiﬀ there lost a breach of con-
tract claim in state court and then sued his opponent’s counsel
in state court twice, alleging abuse of process. He lost both
times. He then sued the same lawyers as well as several state
judges in federal court under 42 U.S.C. § 1983. Nesses alleged
“a massive, tentacular conspiracy” by the defendants to “en-
gineer” his defeat in state court. 68 F.3d at 1004. He also
claimed that counsel for his opponent had “used their politi-
cal clout to turn the state judges against him.” Id. The district
court dismissed Nesses’ suit, citing Rooker-Feldman. Id.
14 No. 21-3373

 This court aﬃrmed, based on res judicata and judicial im-
munity rather than Rooker-Feldman. We noted that applying
Rooker-Feldman to Nesses’ case posed “a diﬃcult question,”
because he was “in a sense attacking” the state court’s rulings.
68 F.3d at 1004. We also acknowledged that, to show he was
injured by the alleged conspiracy, he would have to show that
the state court decision was erroneous, which Rooker-Feldman
would seem to forbid. Id. at 1005. But we concluded that
Rooker-Feldman was “not that broad.” Id. While the doctrine
would prevent Nesses from having a federal court ﬁnd that
the state court judgment was merely incorrect, “if [Nesses]
claims, as he does, that people involved in the decision vio-
lated some independent right of his, such as the right (if it is
a right) to be judged by a tribunal that is uncontaminated by
politics,” then Rooker-Feldman did not apply. Id. Otherwise,
we reasoned, “there would be no federal remedy for a viola-
tion of federal rights whenever the violator so far succeeded
in corrupting the state judicial process as to obtain a favorable
judgment,” a conclusion we thought inconsistent with Den-
nis v. Sparks, 449 U.S. 24 (1980), and with § 1983 suits against
police oﬃcers who fabricate evidence leading to wrongful
convictions. Id. Nevertheless, we aﬃrmed dismissal of
Nesses’ suit on other grounds, ﬁnding that res judicata pre-
vented him from suing the same attorneys for the same al-
leged wrongdoing after he lost in state court, while judicial
immunity barred his claims against the state court judges. Id.
at 1005–06.
 We applied this reasoning in Nesses to a divorce case in
Loubser v. Thacker. Loubser sued forty people, including state
court judges and court reporters, whom she accused of con-
spiring to ruin her ﬁnancially and to corrupt her state court
divorce proceedings in violation of her right to due process of
No. 21-3373 15

law. Some of Loubser’s accusations, we noted, bordered on
the “fantastic.” 440 F.3d at 441. She accused defendants of de-
stroying title documents and other evidence essential to her
divorce proceedings, alleged that court reporters and her own
lawyers altered court transcripts, and charged her counsel
with failing to present critical evidence. She also accused the
presiding judge of “consort[ing] improperly” with her ex-
husband and his witnesses. Id. After the district court dis-
missed her suit as barred by Rooker-Feldman and the domestic-
relations exception, Loubser appealed.
 We reversed in part, ﬁnding that Rooker-Feldman posed no
obstacle to Loubser’s suit because she had alleged that de-
fendants “so far succeeded in corrupting the state judicial pro-
cess as to obtain a favorable judgment.” 440 F.3d at 441, quot-
ing Nesses, 68 F.3d at 1005. We reasoned that holding other-
wise would leave Loubser with no federal remedy other than
appeal to the Supreme Court of the United States, which
would be “ineﬀectual because the plaintiﬀ could not present
evidence showing that the judicial proceeding had been a
farce.” Id. at 441–42. We aﬃrmed the district court’s dismissal
of the defendant judges, who were entitled to absolute im-
munity, but we reversed and remanded as to the other de-
fendants. Id. at 442–43. 3

 3 On remand, the district court dismissed a defendant employed by

the Indiana House of Representatives as well as several defendants whose
only involvement in the case was serving as witnesses in the state divorce
proceedings, all on immunity grounds. Loubser v. Pala, 497 F. Supp. 2d 934,
939–41 (N.D. Ind. 2007). The court also dismissed the court reporters from
the action because Loubser’s complaint failed to plead adequately that she
was disadvantaged by alleged errors in the transcripts or that the court
reporters were more than negligent. Id. at 940. Claims against the remain-
ing defendants proceeded to discovery, after which all defendants were
16 No. 21-3373

 We again relied on the corruption portion of Nesses in Par-
ker v. Lyons. Plaintiﬀ Parker tried to run for a seat on a local
school board, and Lyons, the state’s attorney for the county,
ﬁled suit in state court to block his candidacy on the ground
that a prior felony conviction disqualiﬁed him from running.
757 F.3d at 704. The state court enjoined Parker from running.
Id. Parker then sued Lyons and others in federal court. He
challenged the Illinois statute that worked his disqualiﬁcation
as facially unconstitutional, and he alleged that its enforce-
ment deprived him of equal protection of the law. Id. at 705.
Relevant here, he also accused Lyons of denying him due pro-
cess of law by “arrang[ing] for the case to be heard by [Lyons’]
good friend” and providing Parker with “wholly inadequate
notice.” Id. The district court dismissed his suit on several
grounds, including Rooker-Feldman. Id.
 This court ultimately aﬃrmed dismissal of Parker’s suit,
but we found that Rooker-Feldman did not bar his due process
claim for two reasons. 757 F.3d at 705. First, Parker had ap-
pealed the state court’s ruling, and his appeal was pending
when he ﬁled his federal lawsuit. Because the state court pro-
ceedings had not concluded when Parker initiated his federal
lawsuit, Rooker-Feldman did not apply (though in such circum-
stances, federal courts would have powerful reasons to ab-
stain until the state courts resolved the matter). Id. at 706.
 Second, Parker accused Lyons of “vitiat[ing] the state-
court process by collaborating with a friendly judge to rush
the case to a foreordained judgment.” 757 F.3d at 706. Under

granted summary judgment. Loubser v. United States, 606 F. Supp. 2d 897,
916 (N.D. Ind. 2009); Loubser v. Indiana Abstract & Title Co., No. 4:04-cv-75-
AS, 2009 WL 1513140, at *4 (N.D. Ind. May 29, 2009).
No. 21-3373 17

the reasoning of Nesses, this alleged corruption of the state ju-
dicial process provided a second reason that Rooker-Feldman
did not bar his suit. Id. Nevertheless, we aﬃrmed dismissal of
Parker’s due process claim against Lyons. The Eleventh
Amendment barred Parker’s suit against Lyons in his oﬃcial
capacity, while absolute prosecutorial immunity blocked Par-
ker’s suit against Lyons in his individual capacity. Id.
 Our more recent decision in Bauer v. Koester, 951 F.3d 863
(7th Cir. 2020), limited the corruption rationale in Nesses. In
Bauer, a state court foreclosure action resulted in the tempo-
rary loss of the Bauers’ property. The Bauers sued, among
others, their state court attorneys, opposing counsel, the state
court clerks, and the presiding state court judge. The Bauers
claimed that they were denied their rights to due process,
equal protection, and an unbiased trier of fact. They alleged
that the defendants, including the state judge, “conspired to
introduce a forged version of the escrow account into evi-
dence during the foreclosure trial” and that the judge and
court clerk “allowed the foreclosure plaintiﬀs to issue baseless
citations to discover assets.” Id. at 866.
 The district court dismissed the case on Rooker-Feldman,
and we aﬃrmed. The source of the Bauers’ alleged injury was
the state court judgment: “were it not for the state court’s fore-
closure order and order awarding additional interest, no in-
jury would have resulted from the allegedly forged escrow
exhibit or the citations to discover assets.” 951 F.3d at 866.
And, because “the defendants needed to prevail in the state
court to eﬀectuate their alleged fraud,” we reasoned that ad-
judicating the Bauers’ claims would require us to evaluate the
state court’s judgments, which is prohibited by Rooker-Feld-
man. Id. We acknowledged that the Bauers had alleged
18 No. 21-3373

corruption in the state court, but we held that Rooker-Feldman
still blocked their federal suit because, unlike in Nesses and
Loubser, the Bauers did not “allege that a widespread conspir-
acy undermined the entirety of the state-court proceedings.”
Id. at 867. Instead, the Bauers “merely challenge[d]” two deci-
sions of the state court. Id.
 As Judge Sykes observed in her separate opinion in
Loubser, the Nesses corruption exception “could consume the
Rooker–Feldman rule if interpreted too broadly,” though she
did not disagree with that portion of the majority opinion.
Loubser, 440 F.3d at 444 (Sykes, J., concurring in part and dis-
senting in part). Hadzi-Tanovic’s case provides the oppor-
tunity for us to reconsider the corruption language in Nesses
and to clarify the law in this circuit. For the reasons set out
below, we conclude that Nesses and its progeny were incorrect
in allowing allegations of state court corruption to defeat ap-
plication of the Rooker-Feldman doctrine.
 First and foremost, the Supreme Court has not even hinted
that Rooker-Feldman is subject to such a corruption exception,
and that exception opens up a sizable loophole in this im-
portant jurisdictional doctrine. Recall that an injury is not in-
dependent for purposes of Rooker-Feldman if it is “eﬀectuated”
by the state court judgment, Swartz, 940 F.3d at 391, or if the
plaintiﬀ’s claim essentially requires the federal court to re-
view the state court’s decision, Jakupovic, 850 F.3d at 902.
When a plaintiﬀ alleges that she was injured by judicial bias
or corruption in state court proceedings, both of those
grounds for the doctrine can apply.
 Imagine that Judge Johnson was indeed biased against
Hadzi-Tanovic, but he did not enter any orders against her.
How would she be injured? To be sure, Hadzi-Tanovic has a
No. 21-3373 19

right to a fair and unbiased trier of fact that is independent of
her right to familial association. But Rooker-Feldman looks not
to rights but to injuries. Hadzi-Tanovic was not harmed by al-
leged bias on the part of Judge Johnson until he entered the
June 13, 2018 order mandating that her parenting time be su-
pervised. Because her alleged injury was “eﬀectuated” by the
state court judgment, Rooker-Feldman should still block her
federal suit.
 As Judge Tharp observed in the district court, trying
Hadzi-Tanovic’s allegations of corruption would require a
federal court to review the state court’s decisions. Her com-
plaint invites the district court to ferret out the judge’s sup-
posed bias by examining the state court proceedings. She in-
sists that the “post-trial transcripts in this case provide over-
whelming proof that Associate Judge Johnson used the auspi-
ces of his oﬃce as judge to aid and abet the civil conspiracy
plan” of Pasulka and Pavlovich. And she alleges that Judge
Johnson’s rulings, including his evidentiary and scheduling
decisions, reveal “outrageous, unconstitutional, intentional
bias.”
 We express no views on the merits of those allegations.
The problem here is that the only way a federal court could
determine the merits of those allegations would be to review
the state court’s handling of the case from top to bottom, sub-
stantively and procedurally. If the state court’s decisions ap-
peared to be well-grounded in law and fact and reached
through fair procedures, a federal court would presumably
conclude they were not rooted in bias or corruption. If the fed-
eral court found factual, legal, or procedural errors, the court
would have to consider whether the errors were ordinary er-
rors of a fallible human institution or instead the product of
20 No. 21-3373

corruption. Yet Rooker-Feldman is supposed to prohibit lower
federal courts from engaging in what amounts to appellate
review of state court decisions in this manner. See Sykes, 837
F.3d at 742 (“interlocutory orders entered prior to the ﬁnal
disposition of state court lawsuits are not immune from the
jurisdiction-stripping powers of Rooker-Feldman”); Harold v.
Steel, 773 F.3d 884, 887 (7th Cir. 2014) (Rooker-Feldman forbids
lower federal courts from reviewing “evidence that state
judges consider” or procedures they “use to reach decisions”).
 We are not unsympathetic to the argument, expressed in
Nesses, that our holding here means that “there would be no
federal remedy for a violation of federal rights whenever the
violator so far succeed[s] in corrupting the state judicial pro-
cess as to obtain a favorable judgment.” 68 F.3d at 1005. But
we ultimately think this concern in Nesses was misplaced.
 First, the essence of the Rooker-Feldman doctrine is that “no
matter how wrong a state court judgment may be under fed-
eral law,” lower federal courts do not have jurisdiction to re-
view it. Sykes, 837 F.3d at 742. The Supreme Court acknowl-
edged in Rooker itself that state courts will sometimes err
when interpreting federal law. Rooker v. Fidelity Trust Co., 263
U.S. 413, 415–16 (1923) (holding that even if state court incor-
rectly decided constitutional issues, “no court of the United
States other than this Court could entertain a proceeding to
reverse or modify the judgment for errors of that character”);
see also District of Columbia Court of Appeals v. Feldman, 460
U.S. 462, 486 (1983) (federal district courts do not have juris-
diction “over challenges to state-court decisions in particular
cases arising out of judicial proceedings even if those chal-
lenges allege that the state court’s action was unconstitu-
tional”). Even if important federal rights have been violated,
No. 21-3373 21

that does not give lower federal courts jurisdiction to review
state court judgments where Congress has not provided it.
 Second, we are not convinced that overruling this circuit’s
corruption exception to Rooker-Feldman will actually deprive
plaintiﬀs of a federal remedy they would otherwise have. Our
review of cases in this circuit persuades us that even if Rooker-
Feldman did not bar Hadzi-Tanovic’s suit, claims like hers
would almost certainly founder on other grounds. Plaintiﬀs
alleging injuries arising from corruption in state court pro-
ceedings face a dense thicket of obstacles that prevent their
claims from proceeding to the merits. See Nesses, 68 F.3d at
1006 (claim dismissed on res judicata and immunity
grounds); Loubser, 440 F.3d at 442–43 (defendant judges dis-
missed on immunity grounds); Parker, 757 F.3d at 706 (claim
dismissed on Eleventh Amendment and immunity grounds).
We have found no cases in this circuit in which a federal court
actually undertook a merits review of a state court divorce
proceeding.
 We see similar results in other circuits. Only one circuit,
the Third, has joined us in recognizing a corruption exception
to Rooker-Feldman. But the plaintiﬀ in that case likewise failed
to progress to a review of its claims on the merits. In Great
Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d
159, 162 (3d Cir. 2010), Great Western tried unsuccessfully to
vacate an arbitration award in state court on grounds of im-
proper failure to disclose potential conﬂicts of interest. Great
Western then sued in federal court, alleging that its state court
opponents conspired with state court judges to engineer its
loss. Id. at 171. Great Western charged that the state court’s
decisions were predetermined before the hearing, forcing it to
“litigate in a rigged system.” Id. Citing Nesses, the Third
22 No. 21-3373

Circuit held that Great Western alleged an independent injury
for purposes of Rooker-Feldman. Id. at 172–73. After ﬁnding ju-
risdiction, however, the Third Circuit aﬃrmed dismissal of
Great Western’s claims after concluding that it had failed to
suﬃciently plead a conspiracy among defendants. Id. at 178–
79.
 For the reasons outlined above, we respectfully disagree
with Great Western insofar as it recognizes a corruption excep-
tion to the Rooker-Feldman doctrine. We must stress, however,
that we expect rejection of that exception to produce little if
any change in the outcomes of cases. In cases where plaintiﬀs
try to avoid Rooker-Feldman by alleging that corruption in-
fected their state court proceedings, federal courts rarely if
ever reach the merits of the federal claims.
 These practical concerns also persuade us that we should
overrule the Nesses corruption exception rather than only try
to limit its reach, as we did in Bauer. In Bauer, we chose not to
follow Nesses and Loubser, distinguishing them on the ground
that the Bauers had not alleged a “widespread conspiracy.”
951 F.3d at 867. Upon further consideration, we think that the
standard provided by Bauer will prove unduly diﬃcult to ap-
ply and does not come to grips with the real tension between
the exception and Rooker-Feldman. District courts will be
called upon, at the pleading stage, to decide whether the
plaintiﬀ has alleged enough of a conspiracy, measuring each
complaint against the allegations in Nesses, Loubser, and Bauer.
The standard would also give plaintiﬀs incentives to plead
ever more fantastic allegations of state court corruption to es-
cape Rooker-Feldman. Finally, and most important, limiting
Nesses to cases involving widespread corruption in the state
court proceedings would still call on federal courts to review
No. 21-3373 23

and evaluate state court judgments. As discussed above, this
task is inconsistent with the foundation of the Rooker-Feldman
doctrine. We agree with the result in Bauer but do not follow
further the approach taken in that case.
 We must note two signiﬁcant limits of our holding today.
First, we recognize that a handful of decisions from this court
have held that Rooker-Feldman does not apply where plaintiﬀs
seek damages for injuries caused not by state court corruption
but by the fraudulent conduct of state court opponents. See
Brokaw v. Weaver, 305 F.3d 660, 665 (7th Cir. 2002) (holding
that Rooker-Feldman did not bar plaintiﬀ’s claim that “defend-
ants conspired—prior to any judicial involvement—to cause
false child neglect proceedings to be ﬁled, resulting in her re-
moval from her home”); Johnson v. Pushpin Holdings, LLC, 748
F.3d 769, 773 (7th Cir. 2014) (explaining that Rooker-Feldman
does not bar federal suits seeking damages for fraud or other
unlawful conduct that misled the state court into issuing a
judgment adverse to federal plaintiﬀ); but see Kelley v. Med-1
Solutions, LLC, 548 F.3d 600, 604–05 (7th Cir. 2008) (plaintiﬀs’
claims that they were injured by defendants’ fraudulent rep-
resentations and requests for attorneys’ fees—but not by the
state court’s order to pay—were barred by Rooker-Feldman; be-
cause defendants needed to prevail in state court to capitalize
on their alleged fraud, adjudicating plaintiﬀs’ claims would
require federal court to review the state court’s order); Harold,
773 F.3d at 886 (Rooker-Feldman barred plaintiﬀ’s claim that
defendant debt collector violated Fair Debt Collection Prac-
tices Act by making false statements during state garnishment
proceeding; plaintiﬀ was not injured until state court issued
its order).
24 No. 21-3373

 These decisions relied on the corruption language in
Nesses, but they presented a diﬀerent issue than that posed
here. Hadzi-Tanovic alleges that defendants, including Judge
Johnson, conspired to interfere with her right to a fair and un-
biased trier of fact, so we have focused on whether claims
based on alleged judicial corruption or bias can avoid the
Rooker-Feldman doctrine. Because the issue is not before us,
this decision does not speak to whether or under what cir-
cumstances allegations of fraud by state court opponents (act-
ing without the participation of the state court) escape Rooker-
Feldman.
 Second, in Nesses, we justiﬁed our conclusion that Rooker-
Feldman did not bar plaintiﬀ’s claims of corruption in state
court, in part, by observing that holding otherwise would be
“inconsistent” with cases in which law enforcement oﬃcers
are sued under § 1983 for fabricating evidence in state crimi-
nal trials. 68 F.3d at 1005. As we acknowledged in Nesses, how-
ever, individuals seeking damages for constitutional viola-
tions resulting from their state criminal convictions or sen-
tences may sue under § 1983 only after their convictions or
sentences have been set aside. Id., citing Heck v. Humphrey, 512
U.S. 477 (1994). Such cases under § 1983 do not require a fed-
eral court to review a ﬁnal state court judgment.
 Nesses also cited Dennis v. Sparks, 449 U.S. 24 (1980), in sup-
port of its corruption exception to Rooker-Feldman. In Dennis,
the federal plaintiﬀs sued a state court judge and their state
court opponents under § 1983, alleging that they had cor-
ruptly conspired to obtain and issue a state court order en-
joining plaintiﬀs from mining minerals in accordance with oil
leases they owned. The question before the Supreme Court
was whether the plaintiﬀs’ claims against the private parties
No. 21-3373 25

could proceed after the state court judge was dismissed from
the case. 449 U.S. at 26–27. Dennis—in which the Court never
hinted that the district court lacked jurisdiction—would thus
seem at ﬁrst glance to support Nesses’ conclusion that allega-
tions of state court corruption evade Rooker-Feldman. In Den-
nis, however, the state appellate court had dissolved the in-
junction as illegally issued before plaintiﬀs ﬁled their suit in
federal court. Id. at 25. As a result, the federal lawsuit did not
call on the federal courts to review and possibly to reverse the
judgment of a state court.
 Hadzi-Tanovic’s case does not present—and so we need
not decide—the question whether Rooker-Feldman would bar
her claim if she ﬁled her federal lawsuit after ﬁrst obtaining
an order setting aside the relevant state court judgment. We
are not at all certain that suits alleging violations of federal
rights arising from state court civil proceedings that have later
been invalidated would call on us to “review and reject[ ]”
ﬁnal state court judgments. See Exxon Mobil Corp., 544 U.S. at
284. But this case does not present that issue, so we reserve it
for another day. 4
 C. Reasonable Opportunity to Raise in State Court
 Last, we must assess whether Hadzi-Tanovic had a reason-
able opportunity to raise her federal issues in state court. In
determining whether a plaintiﬀ had a reasonable opportunity

 4 Because this opinion overrules portions of Nesses, Loubser, and Par-

ker, we have circulated this opinion among all active circuit judges pursu-
ant to Circuit Rule 40(e). A majority of active circuit judges voted not to
rehear the case en banc. Judges St. Eve and Kirsch voted in favor of rehear-
ing en banc. Judge Pryor did not participate in consideration of the rehear-
ing question.
26 No. 21-3373

to bring her claim, “we focus on diﬃculties caused not by op-
posing parties, but by state-court rules or procedures.” Beth-
El All Nations Church v. City of Chicago, 486 F.3d 286, 292 (7th
Cir. 2007).
 Hadzi-Tanovic has not argued that state law or procedures
prevented her from raising her federal constitutional issues in
state court. Parties may raise procedural and substantive due
process challenges to custody orders in Illinois state court.
E.g., In re Marriage of Bates, 819 N.E.2d 714, 724–25 (Ill. 2004)
(mother appealed from trial court’s order granting father sole
custody on grounds that admitting child representative’s rec-
ommendation without allowing her to cross-examine the rep-
resentative violated her right to procedural due process); In re
Custody of T.W., 851 N.E.2d 881, 882–83 (Ill. App. 2006) (on ap-
peal, father argued that trial court’s order awarding grand-
parents custody violated his constitutional right to parent his
child). Accordingly, all the elements needed for applying
Rooker-Feldman are present here.
 Conclusion
 Hadzi-Tanovic claims injuries caused by a ﬁnal state court
judgment, she does not allege injuries independent of the
state court judgment, and she had a reasonable opportunity
to present her claims in state court. For these reasons, Rooker-
Feldman bars her suit.
 We understand the high stakes of this case—and of all di-
vorce and custody cases. The serious but as yet unproven al-
legations against guardian ad litem Pasulka remind us of the
potential consequences of genuine corruption in a court sys-
tem. Nevertheless, we may not exercise jurisdiction where
Congress has not provided it. The state courts of Illinois,
No. 21-3373 27

including their attorney disciplinary processes, are capable of
considering and resolving Hadzi-Tanovic’s arguments and
the allegations against Pasulka. 5
 The district court’s judgment dismissing the action with-
out prejudice is AFFIRMED.

 5 In the disciplinary proceeding, the Supreme Court of Illinois sus-

pended Pasulka from the practice of law as of December 15, 2020, pending
further order of that court. His disciplinary proceeding is still pending. In
re Pasulka, No. 2020PR00052 (Ill. Dec. 15, 2020), available at
http://www.iardc.org (last visited March 14, 2023).
28 No. 21-3373

 KIRSCH, Circuit Judge, with whom ST. EVE, Circuit Judge,
joins, dissenting from the denial of rehearing en banc. I disa-
gree with the decision to overrule Nesses v. Shepard, 68 F.3d
1003 (7th Cir. 1995), Loubser v. Thacker, 440 F.3d 439 (7th Cir.
2006), and Parker v. Lyons, 757 F.3d 701 (7th Cir. 2014). Far
from creating any exception to the Rooker-Feldman doctrine,
those cases correctly recognized that Rooker-Feldman is inap-
plicable to federal suits alleging civil rights conspiracies that
result in a state court judgment, so long as the plaintiff does
not seek reversal of that judgment. Today’s decision holds,
however, that Rooker-Feldman applies to such claims if a state
court judgment caused a plaintiff’s injuries, even when the
plaintiff does not seek to overturn the state court judgment.
The effect is to broaden, rather than narrow, Rooker-Feldman’s
application. Because this approach is inconsistent with the
statutory source of the doctrine, 28 U.S.C. § 1257, and Su-
preme Court precedent, I respectfully dissent from the denial
of rehearing en banc.
 I
 Federal and state courts generally enjoy concurrent juris-
diction. The Rooker-Feldman doctrine is one of the statutory ex-
ceptions to that general rule. Through 28 U.S.C. § 1257, Con-
gress vested the Supreme Court with federal appellate juris-
diction over ﬁnal state court judgements: “Final judgments or
decrees rendered by the highest court of a State in which a
decision could be had, may be reviewed by the Supreme
Court by writ of certiorari.” By implication, lower federal
courts lack appellate jurisdiction over state court judgments.
 Rooker-Feldman simply enforces this statutory rule. In
Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), after a state
court entered a judgment against him in a contract dispute,
No. 21-3373 29

Rooker asked a federal court to declare that judgment “null
and void.” Id. at 414. The Supreme Court held that § 1257’s
precursor deprived lower federal courts of jurisdiction to “en-
tertain a proceeding to reverse or modify” the state court
judgment because doing so “would be an exercise of appellate
jurisdiction.” Id. at 416.
 Many years later, in District of Columbia Court of Appeals v.
Feldman, 460 U.S. 462 (1983), the D.C. Court of Appeals upheld
the denial of Feldman’s bar application, so he sued in federal
district court to overturn that decision. Id. at 466–68. The Su-
preme Court held that the lower federal courts had “no au-
thority to review ﬁnal judgments of a state court in judicial
proceedings,” so if Feldman challenged the decision in his
particular case, the federal district court lacked jurisdiction.
Id. at 482. But, if Feldman sought to challenge the rules that
the D.C. Court applied in his case, his challenge could go for-
ward because it did “not require review of a ﬁnal state court
judgment in a particular case.” Id. at 486−87.
 After Feldman, the rule was simple, its reach limited. As we
put it in GASH Associates v. Village of Rosemont, 995 F.2d 726
(7th Cir. 1993):
 The Rooker-Feldman doctrine asks: is the federal
 plaintiﬀ seeking to set aside a state judgment, or
 does he present some independent claim, albeit
 one that denies a legal conclusion that a state
 court has reached in a case to which he was a
 party? If the former, then the district court lacks
 jurisdiction; if the latter, then there is jurisdic-
 tion and state law determines whether the de-
 fendant prevails under principles of preclusion.
30 No. 21-3373

Id. at 728 (citing David P. Currie, Res Judicata: The Neglected
Defense, 45 U. Chi. L. Rev. 317, 321–25 (1977)).
 Not since Feldman has the Supreme Court applied Rooker-
Feldman to dismiss a suit for lack of subject-matter jurisdic-
tion. Instead, the Court has highlighted its exceedingly lim-
ited application. In Exxon Mobil Corp. v. Saudi Basic Industries
Corp., 544 U.S. 280 (2005), the Court held that “Rooker-Feldman
did not prevent the District Court from exercising jurisdic-
tion” when a federal plaintiﬀ “plainly ha[d] not repaired to
federal court to undo the [state court] judgment in its favor.”
Id. at 293−94. The Court also admonished lower courts to stop
enlarging the doctrine: “Variously interpreted in the lower
courts, the doctrine has sometimes been construed to extend
far beyond the contours of the Rooker and Feldman cases, over-
riding Congress’ conferral of federal-court jurisdiction con-
current with jurisdiction exercised by state courts, and super-
seding the ordinary application of preclusion law pursuant to
28 U.S.C. § 1738.” Id. at 283.
 The Court further clariﬁed that Rooker-Feldman “is con-
ﬁned to cases of the kind from which the doctrine acquired its
name: cases brought by state-court losers complaining of in-
juries caused by state-court judgments rendered before the
district court proceedings commenced and inviting district
court review and rejection of those judgments.” Id. at 284. At
the same time, § 1257 does not “stop a district court from ex-
ercising subject-matter jurisdiction simply because a party at-
tempts to litigate in federal court a matter previously litigated
in state court. If a federal plaintiﬀ ‘present[s] some independ-
ent claim, albeit one that denies a legal conclusion that a state
court has reached in a case to which he was a party …, then
there is jurisdiction and state law determines whether the
No. 21-3373 31

defendant prevails under principles of preclusion.’” Id. at 293
(quoting GASH, 995 F.2d at 728).
 Exxon clarified that Rooker-Feldman is inapplicable—and
thus federal courts retain jurisdiction—unless all four criteria
are met:
 1. The federal case is brought by a state-court
 loser;
 2. The plaintiff complains of an injury caused
 by the state court judgment;
 3. The state court judgment was rendered be-
 fore the federal proceeding began; and
 4. The plaintiff is not asking the federal court
 to merely disagree with, but to review and
 reject—that is, to overturn or undo—the
 state court judgment.
 II
 A
 Despite Exxon’s command to rein in Rooker-Feldman, our
circuit’s application of the doctrine has only grown. The
source of this bloat, it seems, has been our singular focus on
whether the plaintiff’s injury was caused by the state court
judgment—step 2 of Exxon. By stopping our inquiry there, we
never get to step 4 and ask whether the relief the plaintiff
seeks would reverse or undo the state court judgment. Exxon
is unambiguous that both steps are necessary for Rooker-Feld-
man to divest a federal court of jurisdiction and eject plaintiffs
from federal court. Yet we regularly treat the former as suffi-
cient. See, e.g., Swartz v. Heartland Equine Rescue, 940 F.3d 387
(7th Cir. 2019); Sykes v. Cook County Court Probate Division, 837
32 No. 21-3373

F.3d 736 (7th Cir. 2016); Kelley v. Med-1 Solutions, LLC, 548 F.3d
600, 607 (7th Cir. 2008). By elevating step 2 and ignoring
step 4, we have turned Rooker-Feldman into a substitute for
preclusion law—the exact thing Exxon told us not to do. See,
e.g., Jakupovic v. Curran, 850 F.3d 898, 903–04 (7th Cir. 2017)
(applying Rooker-Feldman to bar claims that “d[id] not directly
seek to set aside the state trial court’s judgments” because
such claims were “inextricably intertwined with the state
court’s judgments” and plaintiff “had a reasonable oppor-
tunity to present [them] to the state court”).
 The black letter law we have crafted now sets forth a two-
part test:
 To determine whether the Rooker-Feldman doc-
 trine bars jurisdiction, we apply a two-step anal-
 ysis. First, we consider whether a plaintiﬀ’s fed-
 eral claims are “independent” or, instead,
 whether they “either ‘directly’ challenge a state
 court judgment or are ‘inextricably intertwined
 with one.’” Swartz, 940 F.3d at 391. If they are
 “independent” claims, the Rooker-Feldman doc-
 trine does not preclude federal courts from ex-
 ercising jurisdiction over them. But if they “di-
 rectly” challenge or are “inextricably inter-
 twined” with a state-court judgment, then we
 move on to … determine whether the plaintiﬀ
 had a reasonable opportunity to raise the issue
 in state court proceedings.
Andrade v. City of Hammond, 9 F.4th 947, 950 (7th Cir. 2021)
(cleaned up). “Inextricably intertwined,” we said, means
“there must be no way for the injury complained of by the
plaintiff to be separated from the state court judgment.” Id.
No. 21-3373 33

(cleaned up); see also Sykes, 837 F.3d at 742 (“[E]ven federal
claims … that do not on their face require review of a state
court’s decision, may still be subject to Rooker-Feldman if those
claims are inextricably intertwined with a state court judg-
ment.”).
 By omitting step 4 altogether, we have expanded the scope
of Rooker-Feldman to encompass any claim that alleges an in-
jury that is “inextricably intertwined” with a state court judg-
ment. Missing from all of this is any consideration of Exxon’s
ﬁnal requirement—whether the federal plaintiﬀ asks us to re-
ject the state court judgment. But that is the sine qua non of
Rooker-Feldman, which applies only to “cases brought by state-
court losers complaining of injuries caused by state-court
judgments rendered before the district court proceedings
commenced and inviting district court review and rejection of
those judgments.” Exxon, 544 U.S. at 284 (emphasis added).
Only by asking us to exercise appellate jurisdiction—to
“undo” or “overturn [the] state-court judgment”—does a
plaintiﬀ collide with § 1257. Id. at 287 n.2, 293.
 Rather than dig further in search of daylight, we should
realign our law with Exxon. Only if a plaintiﬀ seeks to vacate
relief awarded or to obtain relief denied by the state court—
to undo or overturn the state court judgment—does Rooker-
Feldman bar her claim. If she seeks another form of relief that
does not ask the district court to overturn a state court judg-
ment, then her claim is well within a district court’s power to
adjudicate.
 B
 The panel’s opinion takes us further in the wrong direc-
tion. Rather than answer how Aneta Hadzi-Tanovic seeks to
34 No. 21-3373

undo the state court judgment in her federal lawsuit, it asks
only “whether the district court is essentially being called
upon to review the state court decision.” Ante at 8 (quoting
Jakupovic, 850 F.3d at 902, and relying on the Sykes, Swartz, and
Andrade line of cases). But that is not what Exxon requires: a
district court must be asked to both “review and reject” the
state court judgment before Rooker-Feldman applies. 544 U.S.
at 284.
 Because Hadzi-Tanovic does not ask the federal court to
undo the state court custody order, Rooker-Feldman does not
bar her claim. The state court judgment will remain secure no
matter the outcome of her federal suit. Even if Hadzi-Tanovic
prevails on her damages claim, a federal judgment in her fa-
vor would have no impact on the validity of the state judg-
ment. Whether Hadzi-Tanovic seeks to relitigate issues de-
cided by the state court is a question of state preclusion law,
but Rooker-Feldman “is not a substitute for claim or issue pre-
clusion.” VanderKodde v. Mary Jane M. Elliott, P.C., 951 F.3d
397, 408 (6th Cir. 2020) (Sutton, J., concurring).
 The panel reframes Nesses (and the cases that follow it) as
creating an unfounded “exception” to Rooker-Feldman that
must be overruled. But Nesses created no exception—a term
that appears nowhere in Nesses itself—and overruling it only
widens Rooker-Feldman’s scope. Nesses correctly recognized
that Rooker-Feldman is inapplicable to claims like Hadzi-Ta-
novic’s, where a plaintiﬀ in federal court does not seek to
overturn a state court judgment. Labeling Nesses an exception
suggests that Rooker-Feldman broadly bars federal courts from
hearing federal claims implicating terminated state court pro-
ceedings. But that turns the limited nature of Rooker-Feldman
on its head, and there is no presumption that claims involving
No. 21-3373 35

state court judgments trigger Rooker-Feldman unless some “ex-
ception” applies. To the contrary, the Supreme Court has re-
peatedly reminded us that the doctrine is limited and rarely
applies. See Exxon, 544 U.S. at 287. Exxon therefore validated
Nesses’s reasoning when it told lower courts to stop conﬂating
Rooker-Feldman with preclusion and reaﬃrmed that a plaintiﬀ
who “presents some independent claim, albeit one that denies
a legal conclusion that a state court has reached in a case to
which he was a party,” is not barred by Rooker-Feldman. 544
U.S. at 293 (cleaned up) (quoting GASH, 995 F.2d at 728); see
also Target Media Partners v. Specialty Mktg. Corp., 881 F.3d
1279, 1290 (11th Cir. 2018) (Newsom, J., concurring) (Exxon
clariﬁed “that Rooker-Feldman does not bar a federal-court suit
simply because it relitigates a ‘matter’ previously argued—or
even ‘denies a legal conclusion’ previously reached—in a
state-court action.”). Under both Nesses and Exxon, Rooker-
Feldman requires not only a federal plaintiﬀ with an injury
caused by a state court judgment, but also—in every case—
that the plaintiﬀ asks the federal court to “undo” or “over-
turn” that judgment. By overruling Nesses, the panel discards
the key inquiry into the relief a plaintiﬀ seeks from a federal
court.
 The panel labels Nesses as out of step with our more recent
caselaw. On this front, I agree. But it is our recent caselaw that
is out of step with Exxon, not Nesses. The last thing we’re sup-
posed to do is broaden the universe of cases kept out of court
by Rooker-Feldman, “a doctrine that has produced nothing but
mischief for [40] years.” Lance v. Dennis, 546 U.S. 459, 468
(2006) (Stevens, J. dissenting); see Skinner v. Switzer, 562 U.S.
521, 531 (2011) (“[T]he Rooker-Feldman doctrine has been ap-
plied by this Court only twice, i.e., only in the two cases from
which the doctrine takes its name.”); VanderKodde, 951 F.3d at
36 No. 21-3373

405 (Sutton, J., concurring) (“One could be forgiven for think-
ing, as I and others did, that, unless your name was Rooker or
Feldman, this supposed limit on the jurisdiction of the federal
courts applied to no one.”). But by discarding Exxon’s (and
Nesses’s) requirement that a plaintiﬀ seek “review and rejec-
tion” of a state court judgment, that is exactly what the panel
does.
 III
 Today’s decision does not simply bar Hadzi-Tanovic’s suit
and overrule Nesses, Loubser, and Parker. The panel says its de-
cision does not overrule Brokaw v. Weaver, 305 F.3d 660 (7th
Cir. 2002), but that decision has no leg to stand on without
Nesses. Brokaw held that Rooker-Feldman did not bar civil rights
claims alleging that the defendants defrauded a state court
into terminating custody rights. Id. at 663, 668. The panel says
that Brokaw is diﬀerent because that plaintiﬀ alleged fraud
while Hadzi-Tanovic alleges corruption. But the only distinc-
tion between due process claims that allege fraud in state pro-
ceedings and those that allege corruption is that, in the latter
scenario, the state judge participates in the constitutional vio-
lation. When it comes to federal jurisdiction, that is a distinc-
tion without a diﬀerence, so the legal rule of Brokaw—which
relies almost exclusively on Nesses’s reasoning—is now ex-
cised from our law. Any plaintiﬀ who alleges corruption or
fraud during a completed state proceeding is now without a
federal forum.
 The panel’s extension of Rooker-Feldman also casts doubt
on other cases that correctly found the doctrine inapplicable.
See, e.g., Milchtein v. Chisholm, 880 F.3d 895, 898 (7th Cir. 2018)
(recognizing that plaintiﬀs who do not seek “alteration of a
state court’s judgment” are not barred from federal court by
No. 21-3373 37

Rooker-Feldman); Johnson v. Pushpin Holdings, LLC, 748 F.3d
769, 773 (7th Cir. 2014) (holding that Rooker-Feldman “does not
bar a federal suit that seeks damages for a fraud that resulted
in a judgment adverse to the plaintiﬀ. … Such a suit does not
seek to disturb the judgment of the state court, but to obtain
damages for the unlawful conduct that misled the court into
issuing the judgment.”). It is hard to see how any of these
cases remain after today.
 There are external consequences as well. To bolster its case
for expanding Rooker-Feldman even further, the panel says
that no one else (save the Third Circuit) recognizes a corrup-
tion exception. Ante at 21−22 (citing Great W. Mining & Min.
Co. v. Fox Rothschild LLP, 615 F.3d 158 (3d Cir. 2010)). I respect-
fully disagree. While other courts may not term the Nesses rule
an “exception”—because it’s not—nomenclature is irrelevant.
What matters is that nearly every other circuit has applied the
rule Nesses lays out. See Dorce v. City of New York, 2 F.4th 82,
107–08 (2d Cir. 2021); Great W. Mining, 615 F.3d at 171–73;
Hulsey v. Cisa, 947 F.3d 246, 250–52 (4th Cir. 2020); Truong v.
Bank of Am., N.A., 717 F.3d 377, 383 (5th Cir. 2013); McCormick
v. Braverman, 451 F.3d 382, 392 (6th Cir. 2006); MSK EyEs Ltd.
v. Wells Fargo Bank, N.A., 546 F.3d 533, 539 (8th Cir. 2008); Be-
navidez v. Cnty. of San Diego, 993 F.3d 1134, 1143 (9th Cir. 2021);
Mayotte v. U.S. Bank N.A., 880 F.3d 1169, 1174–75 (10th Cir.
2018); Behr v. Campbell, 8 F.4th 1206, 1209 (11th Cir. 2021).
 Take the Eleventh Circuit’s decision in Behr, for example.
There, a father sued his “ex-wife, her partner, an employee of
Child Protective Services, the principal at [his daughter’s]
school, the Palm Beach County School District, and the Palm
Beach County Department of Children and Families, among
others” alleging that they “conspired to deprive [him] of
38 No. 21-3373

custody through state child custody proceedings.” Behr, 8
F.4th at 1208–09. He alleged that “procedural due process vi-
olations resulted ‘from the use of falsiﬁed and/or coerced in-
formation as a basis for the proceedings and decisions’” and
from “the restriction of access to the courts and denial of ade-
quate legal counsel” during a state custody battle over their
children. Id. at 1213. But because the federal plaintiﬀ did not
seek to “undo the state court’s child custody decision” and
sought “money damages for constitutional violations[,]” his
claims fell “outside Rooker-Feldman’s boundaries.” Id. I see no
ﬂaw in Behr’s understanding of Rooker-Feldman, and the panel
points to none.
 The panel “expect[s] rejection of [the Nesses] exception to
produce little if any change in the outcomes of cases.” Ante at
22. I agree, but so what? Rooker-Feldman is a jurisdictional doc-
trine. A plaintiﬀ’s prospects for recovery tell us nothing about
a federal court’s power to hear her claim. That other doctrines
might ultimately bar recovery does not mean we can disclaim
federal jurisdiction. And I disagree with the panel’s conclu-
sion that eliminating the so-called exception is necessary to
stop plaintiﬀs from making “ever more fantastic allegations
of state court corruption”: Federal Rules of Civil Procedure 8
and 11 solve that problem, and cases with state court anteced-
ents enjoy no monopoly on fantastical allegations.
 Rather than expand our Rooker-Feldman doctrine and over-
rule good law, we should refocus our inquiry on whether the
plaintiﬀ seeks to “review and reject”—to “undo” or “over-
turn”—a state court judgment. Unless she does, we have a
duty to hear her out.
 I respectfully dissent.